STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

KA 09-751

STATE OF LOUISIANA

VERSUS

CRAYTON JONES, JR.

**********

APPEAL FROM THE
ELEVENTH JUDICIAL DISTRICT COURT
PARISH OF SABINE, NO. 60,490
HONORABLE STEPHEN BRUCE BEASLEY, DISTRICT JUDGE

**********

**BILLY HOWARD EZELL**
**JUDGE**

**********

Court composed of Billy Howard Ezell, J. David Painter, and Shannon J. Gremillion, Judges.

**AFFIRMED.**

**Don M. Burkett**
**District Attorney**
**Anna Louise Garcie**
**Assistant District Attorney**
**P. O. Box 1557**
**Many, LA 71449**
**(318) 256-6246**
**Counsel for Plaintiff/Appellee:**
**State of Louisiana**

**Annette Fuller Roach**
**Louisiana Appellate Project**
**P. O. Box 1747**
**Lake Charles, LA 70602-1747**
**(337) 436-2900**
**Counsel for Defendant/Appellant:**
**Crayton Jones, Jr.**

**Crayton Jones, Jr.**
**Sabine Parish Detention Center**
**384 Detention Center Road**
**Many, LA 71449**

**EZELL, JUDGE.**

Defendant, Crayton Jones, Jr., was charged by bill of indictment with second degree murder, in violation of La.R.S. 14:30.1, on August 24, 2005 for the shooting death of Alice Staton. He pled guilty to a reduced charge of manslaughter, in violation of La.R.S. 14:31 on July 10, 2006. He was sentenced to twenty years at hard labor on December 14, 2006.

At that hearing, Defendant verbally indicated his desire to appeal his sentence. Defendant's attorney, Joseph David Toups, Jr., told the court, "I'd like to give notice to the Court of my intention to appeal and I will provide the Court with a written motion for appeal as well as a written motion to reconsider the sentence." The trial court instructed Mr. Toups to file a written motion for appeal prior to the end of the 2007 year. Mr. Toups died on September 17, 2008; at the time of his death, no written motion had been filed.

In the meantime, Defendant timely filed a pro se application for post-conviction relief on July 8, 2008, in which he alleged he pled guilty because he was scared and forced into making the plea. Defendant claimed his guilty plea was made without understanding the nature of the charge and the consequences of the plea. Where the application asked if Defendant had appealed from the judgment of conviction, Defendant checked "Yes." The trial court denied the application for post-conviction relief on July 11, 2008. Defendant did not seek review of the denial.

The record on appeal contains the trial court's order dated October 27, 2008 that states, "[t]he Court has received written correspondence from the defendant in which he requests that new counsel be appointed due to the demise of Mr. Toups." The next entry in the record is a handwritten letter from Defendant dated "12-20-08," addressed to the District Attorney's office in Many, Louisiana, which reads:

1

I, Crayton Jones Jr., was sentence[d] Dec. 14-06 as the charged of manslaughter, in the 11th Judicial Court. My appointed counsel Mr. Joseph Toups (IDB) represented me and after a guilty plea, Mr. Joseph Toups asked for an appeal in which records shows.

Mr. Joseph Toups deceased [sic], in protractive [sic] to assist in the legal matters pertaining to this matter. After inquiring I was told the appeal was placed with the IDB for a new appointed attorney. My prayers is that your office would investigate my allegations, and re-appoint me the attorney as soon as possible. I thank you very much.

Look to hear from you soon.

Sincerely,
Mr. Crayton Jones

The letter bears no indication of the date of filing into the record.

This Court made a request to the office of the Clerk of Court for Sabine Parish for a copy of the letter to which the October 27, 2008 order refers. In response, the clerk's office supplemented the record on appeal with an affidavit stating the letter from Defendant dated "12-20-08" was attached to the October 27, 2008 order and filed with it on that same date. Thus, the only logical explanation is that Defendant placed an incorrect date on the letter, and his request for a new attorney was actually made prior to October 27, 2008.

On March 3, 2009, the trial court signed an order to appoint new counsel for Defendant for the purpose of preparing and filing an out-of-time appeal. Newly-appointed counsel filed an out-of-time motion to reconsider Defendant's sentence on March 9, 2009.[1] The motion alleged the trial court failed to articulate sufficient reasons to justify Defendant's sentence and the sentence was harsh and excessive because Defendant's conduct did not justify a twenty-year sentence. At a hearing on March 24, 2009, the parties submitted the matter but made no oral argument. The trial court denied the motion on March 25, 2009. Defendant then filed a motion for

_____

[1]The record contains no timely filed motion to reconsider.

an out-of-time appeal on April 2, 2009, and the trial court granted the motion on April 3, 2009.

Mr. Toups' oral indication of the intent to appeal Defendant's sentence served as a timely motion for appeal, even though Mr. Toups told the trial court he would "provide the Court with a written motion for appeal as well as a written motion to reconsider the sentence" and never did so. The Louisiana Supreme Court has held an "oral motion made by counsel in open court following sentencing constituted an oral motion for an appeal as authorized by La.C.Cr.P. art. 914(A) . . . ." *State v. Murphy*, 07-2032 (La. 2/22/08), 974 So.2d 1290. *Murphy* reversed this court's decision dismissing an appeal based on a similar oral motion. *See State v. Murphy*, an unpublished opinion bearing docket number 07-555 (La.App. 3 Cir. 9/12/07).

Here, the motion for reconsideration was filed on March 9, 2009, and the motion for an out-of-time appeal was filed on April 2, 2009, both more than two years from the date Defendant was sentenced. Thus, the time had lapsed for Defendant to file an application for post-conviction relief for the purpose of requesting an out-of-time appeal. *See State v. Counterman*, 475 So.2d 336 (La.1985). Based on *Murphy*, this appeal was timely requested by Mr. Toups' oral motion.

Defendant appeals his sentence as excessive. He also argues the trial court's reasons for imposing the sentence are unsupported by the record and do not satisfy the mandates of La.Code Crim.P. art. 894.1. His pro se brief suggests his guilty plea was not knowingly and voluntarily made. For the reasons set forth below, the sentence imposed by the trial court is affirmed.

**FACTS**

According to the pre-sentence investigation report, Defendant told Sabine Parish Sheriff's Detective Steven Marr on July 21, 2005, the day of the incident, that

3

he and Alice Staton had an argument, struggled over a handgun, and it fired. In Defendant's application for post-conviction relief, he alleged that, although he had told the detective he and Staton were "tusseling [sic] over the firearm," in reality, he cocked the gun to see if it needed cleaning, and it accidentally fired. The application for post-conviction relief states Defendant "was scared and shock [sic] up, wehn the accident occurred." What he had said in his initial statement to Detective Marr was "not the way it happen [sic]." Defendant filed correspondence with the trial court on July 8, 2008, in which he stated, "I'm very sorry i [sic] didn't tell how the accident happen [sic] from the beginning, i [sic] am very sorry please forgive me." According to Defendant's handwritten statement attached to the pre-sentence investigation report, Defendant checked the gun to see if it needed oiling. As he "was fixing to set down," it accidentally went off, and he saw Staton "laying there." Defendant threw the gun in a chair, got a towel to wipe Staton's face, went to a neighboring apartment, and asked its resident to call 911. When the resident asked what happened, Defendant told her the gun accidentally fired. Defendant ran back to the apartment, then returned to the neighboring apartment, and was stopped as he tried again to return to his apartment. Defendant was too nervous, scared and hurt "to tell what happen [sic] at the time of the accident."

A witness reported she had been at the couple's residence on the date of the shooting, and Defendant and Staton had argued periodically, from 11:00 p.m. until she left their home at 2:08 a.m. At one point, Defendant retrieved a handgun from his vehicle, brought it into the residence, and placed it on the couch. As the witness left the residence, Staton got into her vehicle and said she wanted to go home with the witness, but the witness did not let her go.

4

At the guilty plea hearing, Defendant indicated he understood the nature of his plea, his possible sentence, and the waiver of his constitutional rights. The trial court found Defendant was capable of making the plea and had "done so knowingly, intelligently and voluntarily, fully understanding the rights [he had] given up by pleading guilty and the consequences thereof."

Defendant's pro se brief, however, states he was "scared and nervous" and did not know what he was doing when he pled guilty. Defendant alleges the guilty plea "was a big misunderstanding," and he would have never pled guilty had he understood the questions better.

### ASSIGNMENTS OF ERROR NUMBERS ONE AND TWO

Defendant claims his twenty-year sentence is cruel, unusual, and excessive and thus violates both the Eighth Amendment to the U.S. Constitution and Article 1, §20 of the Louisiana Constitution. Further, he argues the reasons given by the trial court in support of the imposition of the twenty-year sentence are not supported by the record and are insufficient to satisfy the mandates of La.Code Crim.P. art. 894.1.

At the sentencing hearing on December 14, 2006, the trial court noted Defendant was convicted of simple burglary in 1982. He also served time on a theft charge and was released on good time parole that expired in 1990. The court discussed the benefit Defendant gained by his guilty plea and noted Defendant's crime was one of violence. The trial court then particularly noted its review of the La.Code Crim.P. art 894.1 factors. While it did not comment on each of the thirty-three factors, it specifically mentioned two of them as aggravating and one as mitigating. He noted that Defendant used a dangerous weapon in the commission of the crime and that Defendant foreseeably endangered human life by discharging a firearm, even though that discharge may have been accidental. The trial court also

5

noted in mitigation that the circumstances were unlikely to reoccur.

The trial court should indicate in the record that it considered both the aggravating and mitigating factors of La.Code Crim.P. art. 894.1 in particularizing a sentence to a defendant. *State v. Morain,* 07-1207 (La.App. 3 Cir. 4/2/08), 981 So.2d 66. The court need not "go through all of the aggravating and mitigating circumstances" so long as the record reflects that he adequately considered the article's guidelines." *Id.* at 68 (*quoting State v. Thomas*, 434 So.2d 530, 536 (La.App. 2 Cir. 1983)). The trial judge's specific reference to the factors he considered applicable in this case shows he adequately considered Article 894.1.

Defendant further argues his sentence is excessive considering the circumstances of the case and his background. This court has set out a standard to be used in reviewing excessive sentence claims:

> La.Const. art. I, § 20 guarantees that, "[n]o law shall subject any person to cruel or unusual punishment." To constitute an excessive sentence, the reviewing court must find the penalty so grossly disproportionate to the severity of the crime as to shock our sense of justice or that the sentence makes no measurable contribution to acceptable penal goals and is, therefore, nothing more than a needless imposition of pain and suffering. *State v. Campbell*, 404 So.2d 1205 (La.1981). The trial court has wide discretion in the imposition of sentence within the statutory limits and such sentence shall not be set aside as excessive absent a manifest abuse of discretion. *State v. Etienne*, 99-192 (La.App. 3 Cir. 10/13/99); 746 So.2d 124, *writ denied*, 00-0165 (La.6/30/00); 765 So.2d 1067. The relevant question is whether the trial court abused its broad sentencing discretion, not whether another sentence might have been more appropriate. *State v. Cook*, 95-2784 (La.5/31/96), 674 So.2d 957, *cert. denied*, 519 U.S. 1043, 117 S.Ct. 615, 136 L.Ed.2d 539 (1996).

*State v. Barling*, 00-1241, 00-1591, p. 12 (La.App. 3 Cir. 1/31/01), 779 So.2d 1035, 1042-43, *writ denied*, 01-838 (La. 2/1/02), 808 So.2d 331(alteration in original).

To decide whether a sentence shocks the sense of justice or makes no meaningful contribution to acceptable penal goals, this court has held:

6

> [An] appellate court may consider several factors including the nature of the offense, the circumstances of the offender, the legislative purpose behind the punishment and a comparison of the sentences imposed for similar crimes. *State v. Smith*, 99-0606 (La.7/6/00); 766 So.2d 501. While a comparison of sentences imposed for similar crimes may provide some insight, "it is well settled that sentences must be individualized to the particular offender and to the particular offense committed." *State v. Batiste*, 594 So.2d 1 (La.App. 1 Cir. 1991). Additionally, it is within the purview of the trial court to particularize the sentence because the trial judge "remains in the best position to assess the aggravating and mitigating circumstances presented by each case." State v. Cook, 95-2784, [p.2] (La.5/31/96), 674 So.2d 957, 958.

*State v. Smith*, 02-719, p. 4 (La.App. 3 Cir. 2/12/03), 846 So.2d 786, 789, *writ denied*, 03-562 (La. 5/30/03), 845 So.2d 1061.

Defendant's crime of manslaughter is a violent offense that resulted in Staton's death. The penalty for manslaughter is up to forty years at hard labor. La.R.S. 14:31. Defendant's twenty-year sentence is in the middle of the sentencing range. At the time of his guilty plea, Defendant was forty-five years old. He has a seventh grade education and two prior felony convictions for simple burglary and theft. Defendant now claims the shooting occurred accidentally while he was cleaning or oiling his gun. However, just hours after the shooting *and* at the hearing of his guilty plea, he said the gun discharged as he and Staton argued. Nothing in the record indicates Defendant's story changed until after he was sentenced. Defendant now wants this court to believe that he was unable to truthfully report how the shooting actually occurred because of his shock and fear in the immediate aftermath of the shooting, and again a year later at the guilty plea, but is now, after sentencing, able to tell how the accident really happened.

Defendant alleges the trial court doubted whether the State could have proven second degree murder, and thus, he really received no benefit from the plea bargain to the lesser offense of manslaughter. The trial court commented, "even though there are some indications that it was accidental in regard to not an intentional [sic], it was

7

certainly as a result of elements that make it manslaughter." The trial court did not see the evidence or hear the witnesses' testimony because of the plea bargain, and therefore, could not (and did not) say whether the State could have proven its case. Had Defendant gone to trial for second degree murder, a jury might have found him guilty, and he would have faced a mandatory life sentence without benefit of parole, probation or suspension of sentence. His agreement to plead to manslaughter reduced his possible sentence to no more than forty years at hard labor. Defendant will serve only half of that possible sentence. Clearly, Defendant received considerable benefit from the plea agreement.

The manslaughter conviction is Defendant's third felony. He had a 1982 conviction for simple burglary and a theft conviction for which his parole expired in 1990. The trial court did not use these convictions to enhance Defendant's sentence, but properly considered them as part of Defendant's criminal history.

Similar cases show Defendant's mid-range sentence was not an abuse of the trial court's discretion. The defendant in *State v. Williams*, 03-1537 (La.App. 3 Cir. 6/9/04), 875 So.2d 1043, *writ denied*, 04-1951 (La. 12/17/04), 888 So.2d 864, was sentenced to the maximum forty years at hard labor, without benefits, after a confrontation that resulted in the defendant shooting the victim at point-blank range and killing him.

The victim died of injuries from a fist fight in *State v. Levy*, 08-1467 (La.App. 3 Cir. 6/10/09), 12 So.3d 1135. The *Levy* defendant was charged with second degree murder. He pled guilty to manslaughter and was sentenced to twenty-five years at hard labor. In *State v. Lanieu*, 98-1260 (La.App. 1 Cir. 4/1/99), 734 So.2d 89, *writ denied,* 99-1259 (La. 10/8/99), 750 So.2d 962, the defendant shot his victim after an argument, paused, and shot him again. He drove away with the victim's body in the

car and dumped it in a field. The first circuit affirmed the maximum forty-year sentence.

Defendant argues the aggravating factor of endangering human life should not have been considered in imposing his sentence because that characteristic is inherent to a manslaughter conviction. By nature, manslaughter endangers human life, and so, that factor is already considered in the sentencing range for the crime. Thus, Defendant argues that factor should not be considered to lengthen his sentence in any way.

This argument was not made in the trial court, and thus, may not be considered here. La.Code Crim.P. art. 881.1. "Where the record clearly shows an adequate factual basis for the sentence imposed, remand is unnecessary even where there has not been full compliance with La. C. Cr. P. art. 894.1." *State v. Lanclos*, 419 So.2d 475, (La.1982). The record shows an adequate factual basis for Defendant's twenty-year sentence.

### PRO SE ASSIGNMENT OF ERROR

Defendant's pro se brief does not formally allege any assignments of error. However, it argues Defendant's guilty plea was made because he misunderstood what he was doing, implying the plea was not knowingly and voluntarily made.

This argument was not made in Defendant's motion to reconsider his sentence. It was first raised in Defendant's application for post-conviction relief; that application was denied. The proper mode of review of a judgment denying an application for post-conviction relief is by application for supervisory writs. La.Code Crim.P. art. 930.6. Defendant did not file a supervisory writ application seeking review of the trial court's denial of his application for post-conviction relief. However, in the interest of judicial economy, we will consider Defendant's pro se

9

assignment of error and review the trial court's denial of his application for post-conviction relief.

From the time of the shooting, Defendant maintained it occurred during an argument with Staton that involved the gun. Defendant continued with that version of the facts at the hearing of his guilty plea. Only after he received a twenty-year sentence of imprisonment at hard labor did his story change. Only at that point did he contend the gun accidentally fired while he was cleaning or oiling it.

Defendant's pro se brief alleges he waived his rights because he misunderstood the question asked of him, and his guilty plea to manslaughter was a big misunderstanding. He would have never taken the plea if he had understood the question; he was scared and nervous and did not know what he was doing.

Defendant, however, never identifies the particular question he allegedly misunderstood. The transcript of the plea hearing shows Defendant said no one had threatened him or made any promises or guarantees to try to make him plead against his will. He understood the possible penalty for manslaughter was forty years at hard labor. He said he was not under the influence of drugs or alcohol and that nothing was going on in his life that would prevent him from understanding what he was doing or the consequences of his action. Defendant said he understood he gave up his *Boykin* rights of trial by jury, confrontation of witnesses, and privilege against self-incrimination.

After the State presented the factual basis for the plea, including that Defendant told law enforcement officers that he and Staton had a verbal argument and that the gun fired while they struggled over it, Defendant indicated he still wanted to enter his guilty plea. The judge found Defendant fully understood the rights he relinquished and entered the plea knowingly, intelligently and voluntarily. The record supports

10

a finding that the trial judge was correct.  *See State v. Jones*, 08-1158 (La.App. 5 Cir. 2/25/09), 9 So.3d 893.

Nothing in the record supports Defendant's claim that he misunderstood any part of the hearing.  Defendant's contention that he was too scared and nervous to tell the truth does not provide an adequate basis to withdraw his guilty plea.

## CONCLUSION

The twenty-year sentence imposed by the trial court is affirmed, and the trial court did not err in denying Defendant's application for post-conviction relief.

**AFFIRMED.**