# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 10-1455

**STATE OF LOUISIANA**

**VERSUS**

**RICARDO K. DUKES**

**\*\*\*\*\*\*\*\*\*\***

APPEAL FROM THE
SEVENTH JUDICIAL DISTRICT COURT
PARISH OF CONCORDIA, NO. 08-0854
HONORABLE GLEN W. STRONG, DISTRICT JUDGE

**\*\*\*\*\*\*\*\*\*\***

## SHANNON J. GREMILLION
## JUDGE

**\*\*\*\*\*\*\*\*\*\***

Court composed of Ulysses Gene Thibodeaux, Chief Judge, Jimmie C. Peters, and Shannon J. Gremillion, Judges.

## AFFIRMED AND REMANDED WITH INSTRUCTIONS.

**Bradley R. Burget, District Attorney**
**Seventh Judicial District Court**
**4001 Carter St., Suite 9**
**Vidalia, LA 71373**
**(318) 336-5526**
**Counsel for Appellee:**
**State of Louisiana**

**Ann S. Siddall**
**First Assistant District Attorney**
**Seventh Judicial District Court**
**4001 Carter St., Suite 9**
**Vidalia, LA 71373**
**(318) 336-5526**
**Counsel for Appellee:**
**State of Louisiana**

**Paula C. Marx**
**Louisiana Appellate Project**
**P. O. Box 80006**
**Lafayette, LA 70598-0006**
**(337) 991-9757**
**Counsel for Defendant/Appellant:**
**Ricardo K. Dukes**

**GREMILLION, Judge.**

Defendant, Ricardo K. Dukes, was initially charged by bill of information with manslaughter, a violation of La.R.S. 14:31. He was later indicted by a grand jury with second degree murder, a violation of La.R.S. 14:30.1. Pursuant to a plea agreement, Defendant pled guilty to the amended charge of manslaughter. Defendant was sentenced to serve twenty-five years at hard labor, with credit for time served. Following a hearing, Defendant's pro se motion to reconsider sentence was denied. Defendant now appeals asserting that his sentence is excessive. Defendant's sentence is affirmed, however, we remand with instructions consistent with this opinion.

## FACTS

The State set forth the following facts as a basis for Defendant's guilty plea:

> [O]n April 2nd of '08 the victim, Mr. Holmes, and the defendant were at the home of Carolyn Williams on John Dale Drive in Vidalia. At some point a disagreement began between Mr. Holmes and Mr. Dukes. The disagreement resulted, apparently, from what we can determine, in some pushing and shoving. We're not sure. Mr. Homes [sic] entered into the bathroom. Mr. Dukes followed him into the bathroom. A knife, I'm going to use word, fight, occurred. Mr. Holmes suffered, in addition to a number of defensive wounds, suffered two separately, equally fatal stab wounds to the chest. Mr. Dukes had no wounds on him, no defensive wounds whatsoever. He left. Mr. Holmes expired shortly thereafter on the bathroom floor.

## ERRORS PATENT

In accordance with La.Code Crim.P. art. 920, all appeals are reviewed for errors patent on the face of the record. After reviewing the record, we find there is one error patent.

The sentencing minutes state that the trial court informed Defendant that "he/she has Two (2) years to file for POST CONVICTION RELIEF from the date this conviction becomes final." According to the sentencing transcript, however, the trial

1

court erroneously advised Defendant stating in pertinent part (emphasis added):

**THE COURT**:

All right, now that you've been sentenced, the Court will advise you that you have the right to appeal from the sentence and judgment of this Court.

You are further advised that if you desire to take an appeal a notice of appeal must be filed with the clerk of court within *five days of this date*. You are entitled to have an attorney represent you on appeal, and if you're indigent, that is, financially unable to employ an attorney, the Court will appoint an attorney to represent you without any cost to you. If you're unable to pay the cost of an appeal you also have the right to apply the Court for leave to appeal in forma pauperis, which, when granted would relieve you from having to pay the cost of the appeal.

The Court will advise you that there is a two year prescriptive period for filing post conviction relief applications including applications which seek an out of time appeal. An application for post conviction relief will not be considered if it's filed more than three years after the judgment of conviction and sentence becomes final.

. . . .

**THE COURT:**

I thought I said two; it's two years to file your post conviction relief.

Louisiana Code of Criminal Procedure Article 930.8 provides that the two-year prescriptive period begins to run when the defendant's conviction and sentence become final under the provisions of La.Code Crim.P. art. 914 or 922. Louisiana Code of Criminal Procedure Articles 914 and 922 provide for the time period for filing an appeal as well as the time at which an appellate or supreme court judgment becomes final. According to the time periods set forth in those articles, the earliest a conviction and sentence can become final is *thirty* days after the imposition of sentence, provided that the defendant files neither an appeal nor a motion to reconsider sentence. Thus, the trial court in the present case erroneously advised Defendant regarding the prescriptive period of Article 930.8. Accordingly, the trial

2

court is directed to inform Defendant of the correct prescriptive period by sending

appropriate written notice to Defendant within ten days of the rendition of this

opinion. Additionally, the trial court is instructed to file written proof in the record

that Defendant received the notice. *State v. Roe*, 05-116 (La.App. 3 Cir. 6/1/05), 903

So.2d 1265, *writ denied*, 05-1762 (La. 2/10/06), 924 So.2d 163.

## ASSIGNMENTS OF ERROR NUMBERS ONE AND TWO

Defendant argues that his sentence is excessive and that the trial court did not

comply with La.Code Crim.P. art. 894.1. This court has set forth the following

standard to be used in reviewing excessive sentence claims:

> La.Const. art. I, § 20 guarantees that, "[n]o law shall subject any person to cruel or unusual punishment." To constitute an excessive sentence, the reviewing court must find the penalty so grossly disproportionate to the severity of the crime as to shock our sense of justice or that the sentence makes no measurable contribution to acceptable penal goals and is, therefore, nothing more than a needless imposition of pain and suffering. *State v. Campbell*, 404 So.2d 1205 (La.1981). The trial court has wide discretion in the imposition of sentence within the statutory limits and such sentence shall not be set aside as excessive absent a manifest abuse of discretion. *State v. Etienne*, 99-192 [p.5] (La.App. 3 Cir. 10/13/99); 746 So.2d 124, *writ denied*, 00-0165 (La.6/30/00); 765 So.2d 1067. The relevant question is whether the trial court abused its broad sentencing discretion, not whether another sentence might have been more appropriate. *State v. Cook*, 95-2784 [p. 3] (La.5/31/96); 674 So.2d 957, *cert. denied*, 519 U.S. 1043, 117 S.Ct. 615, 136 L.Ed.2d 539 (1996).

*State v. Barling*, 00-1241, 00-1591, p. 12 (La.App. 3 Cir. 1/31/01), 779 So.2d 1035,

1042-43, *writ denied*, 01-838 (La. 2/1/02), 808 So.2d 331.

To decide whether a sentence shocks the sense of justice or makes no

meaningful contribution to acceptable penal goals, this court has held:

> [A]n appellate court may consider several factors including the nature of the offense, the circumstances of the offender, the legislative purpose behind the punishment and a comparison of the sentences imposed for similar crimes. *State v. Smith*, 99-0606 (La. 7/6/00), 766 So.2d 501. While a comparison of sentences imposed for similar crimes may

3

provide some insight, "it is well settled that sentences must be individualized to the particular offender and to the particular offense committed." *State v. Batiste*, 594 So.2d 1 (La.App. 1 Cir. 1991). Additionally, it is within the purview of the trial court to particularize the sentence because the trial judge "remains in the best position to assess the aggravating and mitigating circumstances presented by each case." *State v. Cook*, 95-2784 (La. 5/31/96), 674 So.2d 957, 958.

*State v. Smith*, 02-719, p. 4 (La.App. 3 Cir. 2/12/03), 846 So.2d 786, 789, *writ denied*, 03-562 (La. 5/30/03), 845 So.2d 1061.

Defendant pled guilty to manslaughter, which carries a maximum possible sentence of forty years at hard labor. As such, Defendant's twenty-five-year sentence was just over one-half of the maximum sentence he could have received. Additionally, Defendant's sentencing exposure was significantly reduced as a result of his plea agreement. Prior to his plea agreement, he faced life in prison for second degree murder.

At sentencing, the State offered into evidence the victim's autopsy report, fifty-five photographs of the crime scene, and a video-taped confession of Defendant. The content of the video tape, however, was not considered due to its length. The State also urged the court to impose the maximum sentence, given the heinous nature of the crime. The victim's mother also made a victim impact statement regarding the emotional pain she suffered as a result of the victim's death.

Defendant urged the court to consider in mitigation that the altercation between he and the victim escalated under the influence of alcohol and other narcotics, that he did not have an extensive history of convictions, and that he was only thirty years old. Defendant also had a work history as a bag boy at a grocery store.

The trial court then stated for the record what it considered in sentencing Defendant, noting first that Defendant was classified as a second felony offender.

The trial court considered the facts of the offense as reported by Defendant in his statement to an investigating officer. Defendant reported that on the day of the accident, he and the victim were at the house of Defendant's girlfriend. Defendant alleged that both he and the victim had been drinking alcohol prior to the incident. According to Defendant, the victim started cursing at him and accusing him of doing something to his girlfriend. The victim and Defendant began arguing and then started fighting. The victim hit Defendant twice in the mouth. Defendant pulled out a knife to defend himself because he thought the victim was reaching for a knife in his pocket. Defendant then "hit" the victim before he could pull out his knife. Defendant saw the victim fall and noticed he was bleeding. At that moment, Defendant knew he had cut the victim. Defendant then left to check on his grandmother in Natchez, Mississippi, where he was later arrested. He did not know that the victim had died.

Next, the trial court referred to Defendant's criminal history. In 1998, Defendant was arrested for various misdemeanors and felonies, only one of which had a disposition—possession of schedule II controlled dangerous substance, reduced to a misdemeanor. In 2004, he was convicted of simple assault and domestic violence and was sentenced to two years at hard labor, suspended, and placed on five years probation.

With regard to Defendant's social history, the trial court noted his age, that both of his parents were deceased, and that he had an older brother and younger sister, as well as four step-siblings. Defendant completed high school and worked various odd jobs until 2001 through 2005 when he worked at Gallo Construction building pallets. At the time of his arrest, he was employed as a landscaper for Gallo Construction. Defendant never married and had no children. He started drinking

5

when he was seventeen years old, after his mother passed away, and he did not stop until the instant offense. Lastly, Defendant admitted to smoking marijuana, but indicated that he had not smoked in the five years prior to the offense.

The trial court then stated:

> All right, the Court has considered this case and the presentence information, the discussions that were held with me by the state and the defense earlier today. I've reviewed the photographs. I've reviewed the autopsy report. It looks like, Mr. Dukes, this was a very horrible situation. The man had some terrible, terrible wounds and I can't believe that you didn't know that he was seriously injured.
>
> You indicated you went to your grandmother's house in Natchez and you didn't know until they arrested you. But this man was very seriously injured and it's over -- for no reason. A life is gone. And that is a serious situation. You've seen this man's sisters and his mother. They've suffered a loss that can't be replaced.
>
> I'm sure you have a family. I believe your mother has passed away and your father has passed away, but I'm sure you have some other relatives. I know you've got a brother and a sister and some step-siblings. But they have the hope of seeing you again, whereas, the mother and sisters of the victim don't have that hope of seeing their loved one again on this earth.
>
> I believe that when you take a human life then you have to pay a pretty substantial price for it. The District Attorney in this case and your attorney were able to arrive at a plea agreement whereby the mandatory life sentence would not be imposed. Had they convicted you of the second degree murder it would be life without parole. You'd spend the rest of your life in prison. But through the plea agreement that did not take place. I feel that I have to give you a substantial sentence due to the fact that there is a man's life has been taken. I feel that that has to be accounted for. I know in your statement you're still saying self defense, but there is no indication that that is the case. If you would, please stand for sentencing.
>
> In this case, after considering all factors, the Court is going to -- under the manslaughter article, the Court could impose a sentence of up to 40 years. You're 31 years old at this time. The Court feels that 40 years would be basically a life sentence for him by the time he would get out -- at 30 years old. He would not have much life left. The Court feels that a lesser sentence would be sufficient in this case to punish him for the wrong that he did.

6

Also, the Court feels that there is some mitigation in the case because of the victim's -- the drugs and alcohol that was in his system. So I feel that there is some mitigation for that. Apparently, the picture I'm getting is that they were all participating in some alcohol, and possibly other substances. I don't know about Mr. Dukes's blood levels, whether he has consumed anything other than alcohol or not. But the picture I'm getting is probably all of them had consumed certainly some alcohol and possibly some other things. And that in my mind is a mitigating factor.

Several cases with similar facts and sentences were found in the jurisprudence. First, in *State v. Levy*, 08-1467 (La.App. 3 Cir. 6/10/09), 12 So.3d 1135, this court affirmed a twenty-five-year sentence for manslaughter. The defendant was involved in a fist fight, striking the victim several times and leaving him battered on the floor. The victim was subsequently taken to the hospital where he died as a result of the beating. The trial court noted that the defendant did not have a criminal record. The trial court also considered the defendant's mental health issues wherein he was found to be incompetent to proceed at one point in pre-trial proceedings. Lastly, the trial court considered the seriousness of the offense and the defendant's lack of remorse.

In *State v. Jones*, 09-751 (La.App. 3 Cir. 2/3/10), 29 So.3d 689, this court affirmed a twenty-year sentence for manslaughter. The defendant had a prior conviction for simple burglary. The trial court also discussed the benefit of his plea agreement and noted that the offense was one of violence. Additionally, the court specifically noted, in its review of the mitigating and aggravating factors in La.Code Crim.P. art. 894.1, the defendant's use of a dangerous weapon in the commission of the crime. Additionally, the defendant foreseeably endangered human life by discharging a firearm, even though it may have been accidental. In mitigation, the trial court found that the circumstances were unlikely to reoccur.

Lastly, in *State v. Campbell*, 09-287 (La.App. 5 Cir. 11/24/09), 28 So.3d 470,

*writ denied*, 10-2 (La. 6/18/10), 38 So.3d 321, the defendant's twenty-two-year sentence was affirmed after considering the trial court's lengthy reasons for the sentence. The trial court noted that the defendant was a personable young man who did a foolish thing. The trial court opined that the defendant did not commit the offense in self-defense or defense of others. The trial court also considered that the defendant was young with no criminal record and would be middle-aged when he completed his sentence. The specific facts of the case were not provided, only that the trial court found a factual basis for the plea based on prior hearings and reports.

Considering our review of related jurisprudence, Defendant's twenty-five-year sentence is comparable to sentences imposed under similar circumstances. Combined with the benefit of his plea agreement, Defendant's sentence is not excessive.

**DECREE**

Defendant's sentence is affirmed and remanded with instructions to inform Defendant of the correct prescriptive period for seeking post-conviction relief by sending appropriate written notice to Defendant within ten days of the rendition of this opinion. Additionally, the trial court should be instructed to file written proof in the record that Defendant received the notice.

**AFFIRMED AND REMANDED WITH INSTRUCTIONS.**