# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 12-933


**STATE OF LOUISIANA**

**VERSUS**

**WILFRED LEE EDWARDS**


**\*\*\*\*\*\*\*\*\*\***

APPEAL FROM THE
FOURTEENTH JUDICIAL DISTRICT COURT
PARISH OF CALCASIEU, NO. 27284-10
HONORABLE DAVID KENT SAVOIE, DISTRICT JUDGE

**\*\*\*\*\*\*\*\*\*\***

## SHANNON J. GREMILLION
## JUDGE

**\*\*\*\*\*\*\*\*\*\***

Court composed of Marc T. Amy, Shannon J. Gremillion, and John E. Conery, Judges.


**AFFIRMED.**

**John F. DeRosier**
**District Attorney, Fourteenth Judicial District Court**
**Karen C. McLellan**
**Assistant District Attorney**
**P. O. Box 3206**
**Lake Charles, LA 70602-3206**
**(337) 437-3400**
**COUNSEL FOR APPELLEE:**
    **State of Louisiana**

**Paula C. Marx**
**Louisiana Appellate Project**
**P. O. Box 80006**
**Lafayette, LA 70598-0006**
**(337) 991-9757**
**COUNSEL FOR DEFENDANT/APPELLANT:**
    **Wilfred Lee Edwards**

**GREMILLION, Judge.**

Defendant, Wilfred Lee Edwards, plead guilty to the manslaughter of Aldwin Smith, a violation of La.R.S. 14:31. At the guilty plea hearing the State recited these facts to support the plea:

> Between June 17th, 2010, and June 18th, 2010, the defendant shot and killed Aldwin Smith. The two had been arguing during the night of June 17th. Edwards had accused Smith of wrongfully selling a handgun which belonged to him or stealing it from him. As the night went on, the argument became more intense. At one point Edwards pushed Smith down, as they argued, in Smith's bedroom. Smith was somewhat disabled. He had had major back surgery, and he walked with a cane. He was 53 years old.

> At one point Edwards leaves Smith's room, walks to the kitchen – and he is cursing all the way to the kitchen – he grabs a knife, saying he was going to hurt Smith with it. One of the ladies there tried to stop him. He said he would hurt her if she didn't get out of the way.

> Went back in the room, and then everybody in the house heard a couple of gunshots. Edwards then runs out of the house, yelling that he had shot Aldwin Smith – they called him "Red" – and that he thought he was dead. And they all leave the area.

> When the sheriff's office gets there, they find that Edwards had shot [Smith] once in the chest, left chest area, and once in the back of his left thigh. After Edwards was picked up, he gave a statement and pretty much said exactly what the witnesses had said, except that when he returned to Smith's room – and they were they only two in the room – Smith had a gun in his hand and was pointing at him. He said that he dropped the knife that he had and dove at the gun, took the gun from Smith, pointed the gun at him and fired at him one time.

> Now, according to all that were present, there were two shots; and the autopsy revealed there were actually two shots that entered the body of Aldwin Smith.

> . . . .

> [A]ll of the witnesses there said they had never seen Wilfred Edwards as upset or mad or angry as he was that night, that he pretty much had just lost it.

The trial court sentenced Defendant to twenty-five years at hard labor without benefit of parole, probation, or suspension of sentence. Defendant filed a

motion to reconsider his sentence. But, the motion did not specify any grounds for reconsideration, and the trial court denied the motion the same day. Defendant now appeals his sentence, asserting it is excessive. It is not, and we affirm.

Louisiana Code of Criminal Procedure Article 881.1(E) states:

> Failure to make or file a motion to reconsider sentence or to include a specific ground upon which a motion to reconsider sentence may be based, including a claim of excessiveness, shall preclude the state or the defendant from raising an objection to the sentence or from urging any ground not raised in the motion on appeal or review.

This court has found that a claim of excessiveness of sentence was barred when the defendant failed to object to the sentence imposed at the sentencing hearing and did not timely file a motion to reconsider sentence. *State v. Quinn*, 09-1382 (La.App. 3 Cir. 5/12/10), 38 So.3d 1102, *writ denied*, 10-1355 (La. 1/7/11), 52 So.3d 885. We find, therefore, that Defendant is precluded from seeking review of his sentence.

However, this court will, nevertheless, review Defendant's claim as a bare claim of excessiveness. *Id.* This court has set forth the following standard to be used when reviewing excessive sentence claims:

> La. Const. art. I, § 20 guarantees that, "[n]o law shall subject any person to cruel or unusual punishment." To constitute an excessive sentence, the reviewing court must find the penalty so grossly disproportionate to the severity of the crime as to shock our sense of justice or that the sentence makes no measurable contribution to acceptable penal goals and is, therefore, nothing more than a needless imposition of pain and suffering. The trial court has wide discretion in the imposition of sentence within the statutory limits and such sentence shall not be set aside as excessive absent a manifest abuse of discretion. The relevant question is whether the trial court abused its broad sentencing discretion, not whether another sentence might have been more appropriate.

*State v. Barling*, 00-1241, 00-1591, p.12 (La.App. 3 Cir. 1/31/01), 779 So.2d 1035, 1042, *writ denied*, 01-0838 (La. 2/10/02), 808 So.2d 331 (alteration in original) (citation omitted).

We consider several factors including the nature of the offense, the circumstances of the offender, and sentences imposed for similar crimes. *See State v. Smith*, 99-0606 (La.7/6/00), 766 So.2d 501. We are mindful, however, that the trial court "remains in the best position to assess the aggravating and mitigating circumstances presented by each case." *State v. Cook*, 95-2784 (La. 5/31/96), 674 So.2d 957, 958, *cert. denied*, 519 U.S. 1043, 117 S.Ct. 615 (1996).

Defendant's attorney pointed out that the shooting occurred "late at night or earlier in the morning," and Defendant was "highly intoxicated." Defendant "d[id] not recall threatening the witnesses, although he does recall and admits to having a knife and bringing it into the room." He "d[id] not recall two shots being fired." Defendant admitted that he fired a shot after struggling with Smith over the gun.

During questioning by the trial court, Defendant agreed that he was angry with Smith because Smith could not find a weapon "he was supposed to hold" for Defendant. After the shooting, Defendant had someone call 911. Defendant "went back in the house to check on Smith, and he passed out in [Defendant's] arms."

Defendant first said that he and Smith "were struggling for the gun . . . when I twisted it out of his hand, I don't know if one went off then or – I don't know." However, the trial court asked, "It didn't happen because you were struggling and the gun went off accidentally? You actually shot him?" Defendant responded, "Yeah" and plead guilty to manslaughter. Nevertheless, Defendant again said, "We were struggling for the – for the weapon."

At the sentencing hearing, Defendant apologized for what happened. He stated, "if they cannot accept my apology, put God in their hearts and just forgive me for what happened."

The PSI indicated that Defendant was convicted of a drug charge in 1992. The trial court noted that he had a previous aggravated burglary charge that the

3

State rejected. Further, he had a possession charge that the State dismissed in return for the plea to the manslaughter charge.

Defendant claims his twenty-five-year sentence is excessive considering the mitigating factors that he was highly intoxicated and admitted that he shot the victim while struggling for the gun, and he had no intent to kill the victim.

According to La.R.S. 14:31, one convicted of manslaughter "shall be imprisoned at hard labor for not more than forty years." Thus, Defendant received a mid-range sentence.

Defendant was guilty of a serious offense and his actions led to Smith's death. At sentencing, Defendant submitted a number of letters from his mother and other relatives and members of his church. They all spoke of what a kind, gentle man Defendant is. Nevertheless, the evidence also shows that Defendant was extremely angry on the night of the shooting, and his anger led to Smith's death.

The trial court noted Defendant's prior criminal history and reviewed the information submitted by Defendant's family and friends and the testimony of the victim's daughter. The trial court also reviewed the offense and PSI reports. He had "no doubt that after a jury trial that the jury would have found [Defendant] guilty of manslaughter." The trial court believed the shooting occurred in "the heat of passion" while Defendant was angry. The trial court further believed Defendant was "in possession of a weapon within a particular timeframe that [he was] not supposed to be in possession of a weapon, and [he] attempted to hide that by giving that weapon to a friend." The argument started because Defendant "didn't get that weapon back. So, [he] got another weapon; and [he] utilized that to shoot and kill Mr. Smith."

4

Police reports filed into the record as exhibits showed that Defendant and Smith began an argument at the home, and another person at the home called someone else to ask for a ride to another location. When the ride arrived, the driver heard gunshots. The woman at the home ran to the vehicle as Defendant ran from the residence, covered in blood. Defendant asked the driver to call for an ambulance, then returned to Smith's bedroom to check on him. Smith was bleeding and gurgling. Defendant left the scene in the vehicle. The driver and Defendant went to a convenience store where Defendant purchased two bottles of beer and cigarettes. Detectives located Defendant's brother, who ultimately led them to a home where they found Defendant asleep on the living room sofa.

The facts of this case are similar to those of *State v. Dukes*, 10-1455 (La.App. 3 Cir. 6/1/11), 66 So.3d 598, *writ denied*, 11-1368 (La. 12/16/11), 76 So.3d 1199. In *Dukes*, a disagreement between the victim and the defendant led to pushing and shoving. The defendant followed the victim into the bathroom, and a knife fight ensued. The victim sustained two equally fatal stab wounds and a number of defensive wounds. The defendant left, and the victim died shortly thereafter on the bathroom floor. This court affirmed the defendant's twenty-five-year sentence.

A bystander in a bar was shot and killed during an altercation among three men in *State v. McGhee*, 10-583 (La.App. 3 Cir. 12/8/10), 52 So.3d 318, *writ denied,* 11-0062 (La. 5/20/11), 63 So.3d 973. Evidence showed that the jury believed that the defendant pulled the gun from beneath his shirt. During a struggle, it fired and struck the victim. The defendant, who had a prior conviction for possession of cocaine, received the maximum sentence of forty years at hard labor.

Defendant here received a mid-range sentence and also benefited greatly from his plea bargain. The State dropped a possession of cocaine charge and agreed not to charge Defendant as a habitual offender. While Defendant expressed remorse for what he did, he also left his friend to die, went to buy cigarettes and beer, and went to sleep.

Although Defendant's assignment of error contends that his sentence is excessive because he was highly intoxicated and had no intent to kill Smith, Defendant fails to show how or whether his intoxication contributed to the killing. Further, the lack of intent to kill is one element that distinguishes manslaughter from the greater offense of second degree murder. La.R.S. 14:30.1 and 14:31. It is the element that limits Defendant's possible sentence to forty years at hard labor rather than life imprisonment. Defendant's twenty-five-year sentence is not excessive.

## DECREE

Defendant's sentence is affirmed.

**AFFIRMED**.