# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 14-1132


**STATE OF LOUISIANA**

**VERSUS**

**BRIAN LOWELL FRAZIER**


**********

APPEAL FROM THE
NINTH JUDICIAL DISTRICT COURT
PARISH OF RAPIDES, NO. 314,826
HONORABLE PATRICIA EVANS KOCH, DISTRICT JUDGE

**********

**JOHN E. CONERY**
**JUDGE**

**********

Court composed of Marc T. Amy, John E. Conery, and David Kent Savoie, Judges.


**AFFIRMED.**

**James C. Downs**
**District Attorney**
**Harold A. Van Dyke, III**
**First Assistant District Attorney**
**9th Judicial District Court**
**Post Office Drawer 13013**
**Alexandria, Louisiana 71309**
**(318) 473-6650**
**COUNSEL FOR APPELLEE:**
    **State of Louisiana**

**Paula C. Marx**
**Louisiana Appellate Project**
**Post Office Box 80006**
**Lafayette, Louisiana 70598-0006**
**(337) 991-9757**
**COUNSEL FOR DEFENDANT/APPELLANT:**
    **Brian Lowell Frazier**

**CONERY, Judge.**

Defendant, Brian Lowell Frazier, was indicted for the second degree murder of Jarvis D. Dwellingham, a violation of La.R.S. 14:30.1. A jury found Defendant guilty of the lesser included offense of manslaughter, a violation of La.R.S. 14:31. After the trial court denied Defendant's motions for new trial and for post-verdict judgment of acquittal, it sentenced Defendant to twenty years at hard labor with credit for time served. Defendant filed a motion to reconsider his sentence, and the trial court denied the motion. Defendant now appeals his conviction and sentence.

On appeal, Defendant argues that the evidence established that he was acting in self-defense, the homicide was justified, and the evidence did not support his conviction. Additionally, Defendant contends that he should have been granted a new trial based on an incorrect jury instruction, or, alternatively, he should get a new trial because ineffective counsel failed to object to the incorrect instruction. Further, Defendant contends that the trial court erred by instructing the jury it could consider flight as relevant evidence when the evidence did not establish his flight. Finally, Defendant argues that his sentence is excessive. For the reasons set forth below, we find that Defendant's assignments of error lack merit and, therefore, affirm Defendant's conviction and sentence.

## FACTS AND PROCEDURAL HISTORY

Defendant, Brian Frazier, and the victim, Jarvis Dwellingham, were both residents of the Goodwill Apartments, subsidized housing in South Rapides Parish. Defendant previously had issues regarding the ownership or use of the undesignated and unassigned parking spots in front of the Goodwill Apartments, one of which resulted in a police report, and all of which were admitted by Defendant's girlfriend while testifying at trial.

On March 13, 2013, the victim was outside of his apartment tending to his vehicle which, according to Defendant, was double parked in front of their adjacent apartments. Defendant testified at trial that when he asked the victim to move his vehicle within the lines so that Defendant's girlfriend could park in front of the apartments, the victim smiled and went into his own apartment. Defendant claimed that he remained in his apartment with the door open, but with his screen door locked. Defendant testified that he was upset, pacing back and forth in his apartment, mumbling angrily to himself, and told his friend over the phone, "I'm just tired of these bitch ass [n------] not giving anybody any respect." Shortly thereafter, Defendant heard the victim outside saying something in an agitated tone, loud enough for Defendant to hear inside of his apartment. Defendant further testified that he then went outside and the victim confronted Defendant right outside of Defendant's apartment, grabbing Defendant by the neck. Defendant stated that he and the victim "clashed like rams." Defendant claims that he did not enter the altercation with a weapon and just repeatedly "punched" the victim, trying to get the victim off of him. Defendant claimed that at some point he believes that he took something sharp from the victim that resulted in a cut on Defendant's hand.

Defendant testified that the victim then released him and walked away from Defendant, passing between their two vehicles. Defendant went back into his apartment, where he grabbed his keys and inhaler and proceeded to leave the Goodwill Apartments. Defendant stated that it was only when he was leaving his apartment and locking the door did he realize that there was "[blood] all over the door," which Defendant attributed to his "bleeding and dripping" hand. Defendant further testified that as he passed between his and the victim's vehicles while

2

leaving the apartments, he saw something on the ground by his vehicle. He picked the item up and as he left the premises, Defendant testified that he saw the victim talking to someone in the parking lot. Further, Defendant stated that it was not until he was halfway to his friend's house in Alexandria that he noticed he had a punch dagger[1] with a matching sheath on his lap. Defendant testified that the sheath had been the thing he had picked up on the ground before entering his vehicle and exiting the apartment complex. Defendant believes that at some point during the altercation with the victim, Defendant disarmed the victim, obtaining the punch dagger, which resulted in the cut on his hand and the injuries to the victim. Defendant stated that he hid the punch dagger under a seat in his vehicle because "[he] really didn't want to get out of [his] car with any type of weapon in [his] hand. [He] didn't want to be accidentally shot, tased or anything like that."

Glenn Hall, an off-duty police officer, was entering the Goodwill Apartments when Defendant was exiting and noticed that Defendant had scratches on his face. Mr. Hall then saw the victim full of blood and radioed for assistance. Mr. Hall testified that he also called in a BOLO (Be On The Lookout) for Defendant, describing a light skinned male driving a white car with scratches on his face. Soon thereafter, after being observed travelling at least eighty to ninety miles an hour by police officers, Defendant was pulled over just as he entered Alexandria, where he told officers that he had been in an altercation with a man at his apartment complex over parking spaces. Defendant was then brought to the Rapides Parish Sheriff's Office, where he was questioned about the altercation.

---

[1] A punch dagger, often referred to as a push dagger in the record, is a "T" shaped short-bladed knife designed to fit in the palm of one's hand, with the blade protruding out through the fingers. The punch dagger used by Defendant and discovered under the backseat of Defendant's vehicle was a Blackhawk Punch Dagger.

Defendant was questioned extensively and continuously claimed that he did not remember anything and did not use a knife, a statement that Defendant admitted was a lie at trial. After the initial stop, Defendant repeatedly told the police officers to check his pocket knife for any evidence that he used it in the altercation, but he never mentioned the punch dagger. However, as questioning came to a close, Defendant admitted that the punch dagger was hidden under the back seat of his vehicle. Detective Ronnie Rollins with the Rapides Parish Sheriff Department testified that he arrived on the scene shortly after Defendant was pulled over. Detective Rollins testified that prior to obtaining a search warrant, the vehicle was sealed. Once the search warrant was obtained, Detective Rollins had to manipulate the latches of the back seat to get the back seat out. Once the back seat was removed, the Blackhawk Punch Dagger with the matching sheath was discovered.

Dr. Christopher Tape, a forensic pathologist, testified that the victim had sixteen stab wounds and three to four scratches on his body, and the autopsy report introduced into evidence had diagrams of the locations. Dr. Tape testified that the stab wounds indicated that the knife had been sharpened on both sides of the blade, consistent with that of a punch dagger. The majority of the stab wounds, a total of nine in a cluster, were located on the left lower back of the victim. Dr. Tape testified that the victim died from the stab wounds and that the wound to the upper left chest that resulted in a perforation of the left lung and a fractured rib was the "immediate or more significant wound; the other would have been fatal eventually, but not immediately."

Dr. Jessica Esparza testified that she performed DNA analysis on items obtained from the victim and Defendant. The blood of both the victim and Defendant was found on Defendant's shirt. Further, Dr. Esparza testified that the

blood of Defendant was found on the punch dagger as well as Defendant's apartment screen door.

Defendant was charged by a bill of indictment with one count of second degree murder, a violation of La.R.S. 14:30.1. On January 31, 2014, the jury returned a verdict of guilty on one count of manslaughter. On March 24, 2014, the trial court sentenced Defendant to serve twenty years at hard labor, with credit for time served. On April 2, 2013, Defendant filed a motion to reconsider sentence, arguing that the trial court inadequately considered the mitigating factors of La.Code Crim.P. art. 894.1. The motion to reconsider sentence was denied without a hearing.

Defendant filed a motion in this court on November 25, 2014, arguing the trial court's April 28, 2014 order merely denied the request for a hearing, and no order either granting or denying the motion itself was ever issued. This court signed an order on December 4, 2014, denying the motion.

Defendant now timely appeals, asserting five assignments of error. For the reasons set forth below, we find Defendant's assignments of error lack merit. We affirm Defendant's conviction and sentence.

## ASSIGNMENTS OF ERROR

On appeal, Defendant assigns the following as error:

1. The evidence established that Brian Frazier was acting in self-defense when he killed Jarvis Dwellingham in response to being attacked by Dwellingham just outside his front door. Accordingly, the homicide was justified, and a manslaughter conviction is not supported by the evidence.

2. In the alternative, a new trial should be ordered as the jury was provided with incorrect, outdated law on self-defense.

3. In the further alternative, should this court find it is precluded from ordering a new trial due to the absence of an objection

5

and the request by counsel for the incorrect jury instruction, the error should nonetheless be considered by the court due to the ineffective assistance of counsel in that respect.

4. The trial court erred in instructing the jury on "flight" and particularly in instructing the jury that "evidence of flight . . . . is relevant" when the evidence did not establish that [Defendant] attempted to escape, but in fact was cooperative.

5. The twenty (20) year hard labor sentence imposed in this case is excessive and not particularized to this offender and offense.

## ERRORS PATENT

In accordance with La.Code Crim.P. art. 920, all appeals are reviewed for errors patent on the face of the record. After reviewing the record, we find that there are no errors patent.

## LAW AND ANALYSIS

### Assignment of Error One

In Defendant's first assignment of error, he alleges that the evidence presented at trial was not sufficient to convict him of manslaughter. Defendant alleges that he was acting in self-defense when he killed the victim. Thus, he contends that the homicide was justified and that the jury erred in finding him guilty of manslaughter.

The standard for reviewing sufficiency of the evidence claims is well-settled. As set forth in *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781 (1979), "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *See State v. Leger*, 05-11 (La. 7/10/06), 936 So.2d 108, *cert. denied*, 549 U.S. 1221, 127 S.Ct. 1279 (2007). The *Jackson* standard of review is now legislatively embodied in La.Code Crim.P. art. 821. It does not allow the appellate court "to substitute its own appreciation of the evidence for that

of the fact-finder." *State v. Pigford*, 05-477, p. 6 (La. 2/22/06), 922 So.2d 517, 521 (citing *State v. Robertson*, 96-1048 (La. 10/4/96), 680 So.2d 1165; *State v. Lubrano*, 563 So.2d 847, 850 (La.1990)). The appellate court's function is not to assess the credibility of witnesses or reweigh the evidence. *State v. Smith*, 94-3116 (La. 10/16/95), 661 So.2d 442.

The factfinder's role is to weigh the credibility of witnesses. *State v. Ryan*, 07-504 (La.App. 3 Cir. 11/7/07), 969 So.2d 1268. Thus, other than insuring the sufficiency evaluation standard of *Jackson*, "the appellate court should not second-guess the credibility determination of the trier of fact," but rather, it should defer to the rational credibility and evidentiary determinations of the jury. *Id.* at 1270 (quoting *State v. Lambert*, 97-64, pp. 4-5 (La.App. 3 Cir. 9/30/98), 720 So.2d 724, 726-27). Our supreme court has stated:

> However, an appellate court may impinge on the fact finder's discretion and its role in determining the credibility of witnesses "only to the extent necessary to guarantee the fundamental due process of law." *State v. Mussall,* 523 So.2d 1305, 1310 (La.1988). In determining the sufficiency of the evidence supporting a conviction, an appellate court must preserve "'the factfinder's role as weigher of the evidence' by reviewing 'all of the evidence . . . in the light most favorable to the prosecution.'" *McDaniel v. Brown,* 558 U.S. ___, ___, 130 S.Ct. 665, 674, 175 L.Ed.2d 582 (quoting *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979)). When so viewed by an appellate court, the relevant question is whether, on the evidence presented at trial, "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson,* 443 U.S. at 319, 99 S.Ct. at 2789. Applied in cases relying on circumstantial evidence, . . . this fundamental principle of review means that when a jury "reasonably rejects the hypothesis of innocence presented by the defendant[ ], that hypothesis falls, and the defendant is guilty unless there is another hypothesis which raises a reasonable doubt." *State v. Captville,* 448 So.2d 676, 680 (La.1984).

*State v. Strother*, 09-2357, pp. 10-11 (La. 10/22/10), 49 So.3d 372, 378.

Louisiana Revised Statutes 14:31(A) states, in pertinent part:

Manslaughter is:

> (1) A homicide which would be murder . . . but the offense is committed in sudden passion or heat of blood immediately caused by provocation sufficient to deprive an average person of his self-control and cool reflection.

A homicide is justifiable when it is "committed in self-defense by one who reasonably believes that he is in imminent danger of losing his life or receiving great bodily harm and that the killing is necessary to save himself from that danger." La.R.S. 14:20(A)(1). When a defendant asserts he should not be found guilty because the killing resulted from self-defense, the State bears the burden of proving beyond a reasonable doubt the defendant did not act in self-defense. *State v. Richards*, 06-1553 (La.App. 3 Cir. 5/2/07), 956 So.2d 160, *writ denied*, 07-1129 (La. 12/14/07), 970 So.2d 529.

In *Richards*, the defendant alleged the victim hit him in the eye with the butt of a gun as he sat in a chair. After hitting the defendant again, the victim pointed the gun at the defendant and threatened to rob him. The defendant gave the victim money, a watch, and jewelry. The victim forced the defendant into a car and made him drive to his home. When the defendant parked the car, the victim hit him again and took his keys. The defendant grabbed a kitchen knife he had in the car and stabbed the victim with it. When the victim dropped the gun and tried to escape, the defendant grabbed him and stabbed him in the chest. The defendant followed the victim out of the car, where they continued to struggle. While the victim lay unmoving in the defendant's lap, the defendant stabbed him several more times. After the victim's death, the defendant and his wife moved the body into a wooded area near the defendant's house and discarded his clothes, the gun, and the knife.

The defendant claimed self-defense. This court explained:

> In examining a claim of self-defense, it is necessary to consider: (1) whether the defendant had a reasonable belief that he was in immediate danger of death or great bodily harm; (2) whether, under circumstances such as the possibility of escape, killing was necessary to prevent that death or great bodily harm; and (3) whether the defendant was the aggressor in the conflict. *State v. Jenkins,* 98-1603 (La.App. 4 Cir. 12/29/99), 750 So.2d 366, *writ denied,* 00-556 (La.11/13/00), 773 So.2d 157. "A person who is the aggressor or who brings on a difficulty cannot claim the right of self-defense unless he withdraws from the conflict in good faith and in such a manner that his adversary knows or should know that he desires to withdraw and discontinue the conflict." La.R.S. 14:21.

*Id.* at 170-71. This court rejected the defendant's argument because the evidence showed he continued to pursue the victim and stab him repeatedly after the victim attempted to escape. Further evidence suggested numerous significant wounds were inflicted after the victim was incapacitated.

In the present case, the evidence presented at trial showed that Defendant had been protective and defensive of the parking places at the Goodwill Apartments, even though the parking spaces were not assigned and certainly not reserved in his name. Further, Defendant testified that when he confronted the victim about the parking spots on the day of the victim's death, the victim replied with a smile, which only further aggravated Defendant, leading Defendant to pace around his apartment mumbling in anger to himself and resulting in his friends telling Defendant over the phone to leave the apartment before "something happened."

Defendant denied knowing anything about the punch dagger until he knew that he was going to jail. While testifying at trial, Defendant alleges that he thought he was just punching the victim because he wanted the victim off of him. Defendant testified that he still does not know how he obtained the punch dagger,

9

but that he must have obtained it from the victim, and the victim must have dropped the sheath between their two vehicles when the victim walked away from Defendant.

We find that Defendant's actions, statements, testimony, and the evidence and statements of others gave any rational trier of fact the chance to view the evidence in such a way to conclude that the sixteen stab wounds and three to four scratches leading to the victim's death were not committed in self-defense. Like the defendant in *Richards*, Defendant's actions were not those of self-defense, but those committed in sudden passion and heat of blood that had been admittedly brewing for Defendant for some time. The jury in this case was presented with all of the evidence, including numerous facts that could lead any reasonable fact-finder to conclude that Defendant was not credible and his story completely unbelievable. Thus, we find Defendant's first assignment of error lacks merit.

### *Assignment of Error Two*

In Defendant's second assignment of error, he alleges that he deserves a new trial because the jury was not provided with the correct law on self-defense, which no longer allows for the consideration by the fact-finder of the possibility of retreat when acting in self-defense. Although thoroughly discussed on the record, we find that the record contains no objection by Defendant to the jury instructions that were presented to the jury. Defendant only now complains of the error on appeal.

Louisiana Code of Criminal Procedure Article 801(C) provides:

> A party may not assign as error the giving or failure to give a jury charge or any portion thereof unless an objection thereto is made before the jury retires or within such time as the court may reasonably cure the alleged error. The nature of the objection and grounds therefor shall be stated at the time of objection. The court shall give the party an opportunity to make the objection out of the presence of the jury.

10

Therefore, in accordance with what has been dictated by the legislature, we find that Defendant's second assignment of error lacks merit for lack of an objection to the jury instruction.

### *Assignment of Error Three*

In his third assignment of error, Defendant contends that if this court finds that a new trial may not be granted due to lack of objection to the jury instruction by trial counsel, then this court should find that Defendant's trial counsel was ineffective. In order to conclude that counsel has indeed been ineffective, the appellant must "show a reasonable possibility that, but for counsel's error, the outcome of the trial would have been different." Thus, Defendant must first show that counsel's performance was deficient and second, that the deficiency prejudiced Defendant. *See Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052 (1984). The issue of ineffective assistance of counsel is more appropriately addressed in an application for post-conviction relief, where an evidentiary hearing can be conducted in the trial court. *State in the Interest of A.B.*, 09-870 (La.App. 3 Cir. 12/9/09), 25 So.3d 1012. However, where an ineffective assistance claim is raised on appeal, this court may address the merits of the claim if the record discloses sufficient evidence to rule on it. *Id.*

> Regarding self-defense, the trial court instructed the jury:
>
> A homicide is justifiable if committed in self-defense by one who reasonably believes that he is in imminent danger of losing his life or receiving great bodily harm and that the killing is necessary to save himself from that danger. The danger need not have been real as long as the defendant reasonably believed that he was in actual danger. Some factors that you should consider in determining whether the defendant had a reasonable belief that the killing was necessary are the possibility of avoiding the necessity of taking human life by retreat, the excitement and confusion of the occasion, the possibility

11

of preventing the danger to himself by using force less than killing, and the defendant's knowledge of the assailant's dangerous character.

However, the legislature has provided in La.R.S. 14:20(D) that when a fact-finder is considering justifiable homicide:

> No finder of fact shall be permitted to consider the possibility of retreat as a factor in determining whether or not the person who used deadly force had a reasonable belief that deadly force was reasonable and apparently necessary to prevent a violent or forcible felony involving life or great bodily harm or to prevent the unlawful entry.

As stated in Assignment of Error Two, Defendant, through counsel, did not object to the inclusion of the retreat language when the trial court instructed the jury as stated above. Consequently, Defendant contends that counsel was ineffective in not objecting.

The issue of whether retreat before the stabbing occurred as opposed to flight after the act concluded was not an issue addressed or argued by either party at trial. It was not a focal point of trial and not an issue that the jury would have focused on in reaching its determination that Defendant did not act in self-defense when he stabbed defendant a total of sixteen times. In finding Defendant guilty of manslaughter, the jury made a credibility determination. In its eleven to one verdict of guilty of manslaughter, the jury clearly concluded that Defendant's rendition of the events that took place on March 13, 2013 was implausible. Thus, we find that even though Defendant's counsel failed to object to the erroneous jury instruction given by the trial court, the State met its burden of proving that the inclusion of the retreat language was not an issue at trial. Assuming arguendo that the failure of trial counsel to object to the instruction in question may constitute ineffective assistance of counsel, a point we do not reach, the inclusion of the retreat language in the instruction was harmless and did not prejudice Defendant.

*See State v. Duplichan*, 06-852 (La.App. 3 Cir. 12/6/06), 945 So.2d 170, *writ denied*, 07-148 (La. 9/28/07), 964 So.2d 351. We find the second prong of the *Strickland* test is not met, thus, Defendant's third assignment of error lacks merit.

*Assignment of Error Four*

Defendant argues in his fourth assignment of error that the trial court erred in its instruction, "Evidence of flight, concealment and attempt to avoid apprehension is relevant." Prior to the trial court's reading of the jury instructions, the parties and the trial court discussed the issue of flight. The State commented that defense counsel "says [the State is] not entitled to a flight instruction," and defense counsel argued the evidence did not support an argument that Defendant fled the scene. The trial court indicated that it understood the arguments and was going to research the issue "so [they could] continue the discussion." The record shows that a recess was called and a bench conference between the court and counsel began, and then moved to chambers. The bench conference and chambers discussion were not made part of the record.

After the conference, the parties made their closing arguments, and the trial court read the instructions to the jury, including the instruction about flight. The record contains no indication of defense counsel's objection to the instruction as given to the jury. Thus, as we concluded above in Assignment of Error Two, Defendant did not object to the jury instruction addressing flight. Accordingly, Defendant may not raise the issue now on appeal. La.Code Crim.P. art. 801(C).

*Assignment of Error Five*

In his fifth and final assignment of error, Defendant asserts that the twenty years at hard labor sentence imposed by the trial court is excessive and not particularized to him or the offense. Defendant was indicted for second degree

13

murder, a conviction which carries a life sentence without the benefit of probation, parole, or suspension of sentence. The jury, however, did not find Defendant guilty of second degree murder and returned a responsive verdict of guilty of manslaughter, a lesser included offense focusing on the fact that the crime was committed in sudden passion or heat of blood. A person convicted of manslaughter shall be sentenced to not more than forty years at hard labor.

This court has previously discussed the standard for reviewing excessive sentence claims:

> [Louisiana Constitution Article] I, ' 20 guarantees that, "[n]o law shall subject any person to cruel or unusual punishment." To constitute an excessive sentence, the reviewing court must find the penalty so grossly disproportionate to the severity of the crime as to shock our sense of justice or that the sentence makes no measurable contribution to acceptable penal goals and is, therefore, nothing more than a needless imposition of pain and suffering. The trial court has wide discretion in the imposition of sentence within the statutory limits and such sentence shall not be set aside as excessive absent a manifest abuse of discretion. The relevant question is whether the trial court abused its broad sentencing discretion, not whether another sentence might have been more appropriate.

*State v. Barling*, 00-1241, 00-1591, p. 12 (La.App. 3 Cir. 1/31/01), 779 So.2d 1035, 1042, *writ denied*, 01-838 (La. 2/1/02), 808 So.2d 331 (citations omitted).

Even though a penalty falls within the statutory sentencing range, it may still be unconstitutionally excessive:

> In deciding whether a sentence is shocking or makes no meaningful contribution to acceptable penal goals, an appellate court may consider several factors including the nature of the offense, the circumstances of the offender, the legislative purpose behind the punishment and a comparison of the sentences imposed for similar crimes. While a comparison of sentences imposed for similar crimes may provide some insight, "it is well settled that sentences must be individualized to the particular offender and to the particular offense committed." Additionally, it is within the purview of the trial court to particularize the sentence because the trial judge "remains in the best position to assess the aggravating and mitigating circumstances presented by each case."

*State v. Smith*, 02-719, p. 4 (La.App. 3 Cir. 2/12/03), 846 So.2d 786, 789, *writ denied*, 03-562 (La. 5/30/03), 845 So.2d 1061 (citations omitted). "[T]he trial judge need not articulate every aggravating and mitigating circumstance outlined in [La.Code Crim.P.] art. 894.1[;] the record must reflect that he adequately considered these guidelines in particularizing the sentence to the defendant." *State v. Smith*, 433 So.2d 688, 698 (La.1983) (citing *State v. Ray*, 423 So.2d 1116 (La.1982); *State v. Keeney*, 422 So.2d 1144 (La.1982); *State v. Duncan*, 420 So.2d 1105 (La.1982)). "The appellate court shall not set aside a sentence for excessiveness if the record supports the sentence imposed." La.Code Crim.P. art. 881.4(D).

Defendant's motion to reconsider his sentence alleged the trial court failed to adequately consider the mitigating factors of La.Code Crim.P. art. 894.1; therefore, his sentence is unconstitutionally excessive. On appeal, Defendant argues his sentence constitutes unconstitutionally excessive punishment.

The record indicates the trial court filed letters written on Defendant's behalf into the record at the sentencing hearing, heard from five witnesses who testified on Defendant's behalf, heard one victim impact statement, and heard testimony from Defendant himself. Defendant expressed remorse for the victim's death and said he never wanted to hurt or fight the victim. Defendant offered help to the victim's family and said he "would like to start a trust fund in [the victim's] son's name[.]" Defendant's witnesses spoke of what a good man he is. Nevertheless, the trial court noted Defendant was caught up in anger at the time of the stabbing, and that anger led to the victim's death.

15

The trial court then indicated that it had gone through some of the guidelines of La.Code Crim.P. art. 894.1. It determined Defendant required correctional treatment "most effectively done within an institution." The trial court believed "[a]nything less than a jail term just would make light of what [the victim's] life was all about." The trial court noted Defendant used a weapon that inflicted deadly harm on the victim. The trial court considered Defendant's criminal history of only one drug charge as a mitigating factor but determined the "anger and bad decisions" arising out of this incident were unrelated to his criminal history. Thus, the lack of a "prior bad record [did] not mean a sentence is not appropriate." The trial court recommended Defendant's placement in a re-entry program. Her decision was influenced by Defendant's choice to leave the scene of the incident rather than to call the police. The trial court also considered the jury's finding that Defendant was "the aggressor in the incident" and her concerns about Defendant's behavior prior to the incident, the anger he expressed, and his behavior after the stabbing.

In *State v. Dukes*, 10-1455 (La.App. 3 Cir. 6/1/11), 66 So.3d 598, *writ denied*, 11-1368 (La. 12/16/11), 76 So.3d 1199, a disagreement between the victim and the defendant led to pushing and shoving. The defendant followed the victim into the bathroom, and a knife fight ensued. The victim sustained two equally fatal stab wounds and a number of defensive wounds. The defendant left, and the victim died shortly thereafter on the bathroom floor. This court affirmed the defendant's twenty-five-year sentence.

A bystander in a bar was shot and killed during an altercation among three men in *State v. McGhee*, 10-583 (La.App. 3 Cir. 12/8/10), 52 So.3d 318, *writ denied,* 11-62 (La. 5/20/11), 63 So.3d 973. Evidence showed the jury believed the

defendant pulled the gun from beneath his shirt. During a struggle, it fired and struck the victim. The defendant, who had a prior conviction for possession of cocaine, received the maximum sentence of forty years at hard labor.

The defendant in *State v. Edwards*, 12-933 (La.App. 3 Cir. 3/6/13), 129 So.3d 104, *writ denied,* 13-761 (La. 11/1/13), 125 So.3d 418, pled guilty to manslaughter for the shooting death of a man with whom he had argued all evening about a handgun. This court noted the defendant was highly intoxicated and angry with the victim at the time of the shooting. Witnesses said they had never seen the defendant as angry as he was that night. While he expressed remorse for the killing, he also left his friend to die, went to a store to buy beer and cigarettes, and went to a house where he was found asleep. The defendant had a prior drug conviction, a rejected charge for aggravated burglary, and a cocaine possession charge that was dismissed in exchange for his guilty plea to manslaughter. Family and church members submitted letters about what a kind, gentle man the defendant was. This court affirmed the defendant's twenty-five-year sentence.

Considering the nature of the offense and the indictment of second degree murder, had Defendant been found guilty of the crime charged, he would be facing a life sentence without benefit of probation, parole, or suspension of sentence. The record indicates that the trial court thoroughly considered the sentencing factors and did not abuse its wide discretion in sentencing Defendant to a mid-range sentence of twenty years at hard labor, with credit for time served. Further, the sentences imposed in similar cases indicate that Defendant's sentence was certainly within the sentencing range and appropriate considering the

circumstances.  Thus, we do not find Defendant's sentence excessive.  Defendant's sentence is affirmed.

## CONCLUSION

For the reasons stated above, we find that Defendant's assignments of error lack merit.  We, therefore, affirm Defendant's conviction and sentence.

**AFFIRMED.**