NOT DESIGNATED FOR PUBLICATION

STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

18-420

STATE OF LOUISIANA

VERSUS

MARLIN L. MAYFIELD

A/K/A MARLIN MAYFIELD

**********

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF ACADIA, NO. CR 81400
HONORABLE KRISTIAN DENNIS EARLES, DISTRICT JUDGE

**********

CANDYCE G. PERRET
JUDGE

**********

Court composed of John D. Saunders, Billy Howard Ezell, and Candyce G. Perret, Judges.

AFFIRMED AS AMENDED.

**Hon. Keith A. Stutes**
**Lafayette Parish District Attorney**
**P. O. Box 3306**
**Lafayette, LA 70502-3306**
**(337) 232-5170**
**COUNSEL FOR PLAINTIFF-APPELLEE:**
**State of Louisiana**

**Jack Edward Nickel**
**Assistant District Attorney**
**P. O. Box 288**
**Crowley, LA 70527**
**(337) 788-8831**
**COUNSEL FOR PLAINTIFF-APPELLEE:**
**State of Louisiana**

**David Rubin**
**15ᵗʰ Judicial District Public Defender**
**516 SE Court Circle**
**Crowley, LA 70526**
**(337) 889-5672**
**COUNSEL FOR DEFENDANT-APPELLANT:**
**Marlin L. Mayfield**

**PERRET, Judge.**

Defendant, Marlin L. Mayfield, entered a plea of guilty to one count of manslaughter, a violation of La.R.S. 14:31, and one count of aggravated assault with a firearm, a violation of La.R.S. 14:37, in connection with the June 23, 2013, shooting of his wife. Defendant appeals his manslaughter sentence as excessive. For the following reasons, we amend, and as amended, affirm.

**Factual and Procedural Background:**

On June 23, 2013, Teresa Mayfield, Defendant's wife, arrived at Defendant's home to pick up their children and an argument ensued. During the argument, Defendant took Mrs. Mayfield from her vehicle and into his home where he shot her in the back of the head. Defendant then drove to his brother's house, called 911, and reported that he shot his wife. Defendant handed over the gun to his brother and asked his brother to pick up his daughters from his home. Defendant, having told the 911 dispatcher where he could be located, was arrested and brought to the Crowley Police Department.[1]

Defendant, Marlin L. Mayfield, was charged by indictment on September 20, 2013, with one count of first-degree murder of Teresa Mayfield, a violation of La.R.S. 14:30, and one count of second-degree kidnapping, a violation of La.R.S. 14:44.1. On October 16, 2013, Defendant entered a plea of not guilty to all of the charges.

At the July 20, 2017 Boykinization hearing, Defendant entered a plea of guilty to one count of manslaughter, a violation of La.R.S. 14:31, and one count of

---

[1]The facts in this case have been obtained from the sentencing memorandum and pre-sentence investigation report because the factual recitations at the plea and sentencing hearings were minimal.

aggravated assault with a firearm, a violation of La.R.S. 14:37.4. The trial court ordered a pre-sentence investigation (PSI) report in preparation for the sentencing hearing. Additionally, while the plea agreement permitted the trial court to sentence Defendant up to the maximum of forty years, the sentence for aggravated assault with a firearm was capped at seven years, to run consecutively with the manslaughter sentence.

On October 12, 2017, Defendant was sentenced to forty years without the benefit of probation, parole, or suspension of sentence for manslaughter and seven years at hard labor for aggravated assault with a firearm, the sentences to run consecutively. Defendant filed a motion to reconsider sentence arguing that the sentences were unconstitutionally excessive, and the trial court failed to properly consider the mitigating factors. The trial court denied the motion without comment. Defendant now appeals and assigns a single error: the manslaughter sentence is excessive.

## Errors Patent:

In accordance with La.Code Crim.P. art. 920, all appeals are reviewed for errors patent on the face of the record. After reviewing the record, we find that there are two errors patent.[2]

First, the trial court erred in ordering that Defendant's manslaughter sentence be served without the benefit of parole. For manslaughter, Defendant was sentenced

---

[2]We note that when the trial court imposed Defendant's seven-year sentence it did not state that the seven-year sentence was for the crime of aggravated assault with a firearm. The trial court simply stated, "And consecutive to that [the manslaughter sentence] I am going to give you the seven (7) years hard labor to run consecutive with the forty (40) years." Nonetheless, it is clear from the transcript that the seven-year sentence was for aggravated assault with a firearm. Immediately before imposing the sentences, the trial court acknowledged that Defendant pled guilty to La.R.S. 14:37.4, and that, in this case, the sentence was capped on that statute to seven (7) years. Accordingly, no error is recognized.

2

to forty years without the benefit of parole, probation, or suspension of sentence. Louisiana Revised Statutes 14:31 provides:

> B. Whoever commits manslaughter shall be imprisoned at hard labor for not more than forty years. However, if the victim killed was under the age of ten years, the offender shall be imprisoned at hard labor, without benefit of probation or suspension of sentence, for not less than ten years nor more than forty years.

Thus, the above penalty provision does not prohibit parole, probation, or suspension of sentence in this case. However, at the time the offense was committed, La.Code Crim.P. art. 893(A) prohibited a suspended sentence for an offense designated as a crime of violence in La.R.S. 14:2(B), which included the crime of manslaughter.[3] Therefore, the trial court properly imposed Defendant's manslaughter sentence without the benefit of probation or suspension of sentence. But, because La.Code Crim.P. art. 893 did not authorize the restriction of parole, the trial court erred in ordering Defendant's manslaughter sentence to be served without the benefit of parole. Accordingly, this court amends Defendant's manslaughter sentence to delete the denial of parole eligibility and instructs the district court to make an entry in the minutes reflecting this change. *State v. Batiste*, 09-521 (La.App. 3 Cir. 12/9/09), 25 So.3d 981.

Second, though the minutes indicate the manslaughter sentence is to be served at hard labor, the trial court at the sentencing hearing failed to impose the sentence at hard labor as required by La.R.S. 14:31, rendering the sentence illegally lenient. *State v. Perkins*, 13-245 (La.App. 3 Cir. 11/6/13), 124 So.3d 605. Although the

---

[3]Louisiana Code of Criminal Procedure article 893 has been amended several times. Since none of these amendments state otherwise, the applicable version is that which was in effect on the day Defendant committed the offense. *State v. Mayeux*, 01-3408 (La. 6/21/02), 820 So.2d 524. Additionally, even though the amendments broadened the availability of probation for certain offenses, Defendant would still not be eligible for probation or suspension of sentence under the current version of La.Code Crim.P. art. 893(A)(2).

authority is granted and discretionary under La.Code Crim.P. art. 882, this court will not consider an illegally lenient sentence unless it is an error raised on appeal. *Id. See also State v. Jacobs*, 08-1068 (La.App. 3 Cir. 3/4/09), 6 So.3d 315, *writ denied*, 09-755 (La. 12/18/09), 23 So.3d 931.

## Discussion:

In his sole assignment of error, Defendant alleges that the trial court erred when it ordered a forty-four-year-old veteran to the maximum sentence for manslaughter of forty years imprisonment without considering mitigating factors, including his documented mental health history, military service, and lack of a criminal history. Defendant objected to the sentence at the hearing and filed a motion to reconsider sentence. He separates this assignment of error into two parts: the trial court erred in failing to properly consider the many mitigating factors; and the forty-year maximum sentence for the manslaughter conviction was excessive.

This court previously explained the standard of review to be applied in assessing excessive sentence claims:

> [Louisiana Constitution Article] I, [§]20 guarantees that, "[n]o law shall subject any person to cruel or unusual punishment." To constitute an excessive sentence, the reviewing court must find the penalty so grossly disproportionate to the severity of the crime as to shock our sense of justice or that the sentence makes no measurable contribution to acceptable penal goals and is, therefore, nothing more than a needless imposition of pain and suffering. The trial court has wide discretion in the imposition of [a] sentence within the statutory limits and such sentence shall not be set aside as excessive absent a manifest abuse of discretion. The relevant question is whether the trial court abused its broad sentencing discretion, not whether another sentence might have been more appropriate.

*State v. Barling*, 00-1241, 00-1591, p. 12 (La.App. 3 Cir. 1/31/01), 779 So.2d 1035, 1042, *writ denied*, 01-838 (La. 2/1/02), 808 So.2d 331 (citations omitted).

4

Even though a penalty falls within the statutory sentencing range, it may still be unconstitutionally excessive:

> In deciding whether a sentence is shocking or makes no meaningful contribution to acceptable penal goals, an appellate court may consider several factors including the nature of the offense, the circumstances of the offender, the legislative purpose behind the punishment and a comparison of the sentences imposed for similar crimes. While a comparison of sentences imposed for similar crimes may provide some insight, "it is well settled that sentences must be individualized to the particular offender and to the particular offense committed." Additionally, it is within the purview of the trial court to particularize the sentence because the trial judge "remains in the best position to assess the aggravating and mitigating circumstances presented by each case."

> *State v. Smith*, 02-719, p. 4 (La.App. 3 Cir. 2/12/03), 846 So.2d 786, 789, *writ denied*, 03-562 (La. 5/30/03), 845 So.2d 1061 (citations omitted). "[T]he trial judge need not articulate every aggravating and mitigating circumstance outlined in [La.Code Crim.P.] art. 894.1[;] the record must reflect that he adequately considered these guidelines in particularizing the sentence to the defendant." *State v. Smith*, 433 So.2d 688, 698 (La.1983) (citing *State v. Ray*, 423 So.2d 1116 (La.1982); *State v. Keeney*, 422 So.2d 1144 (La.1982); *State v. Duncan*, 420 So.2d 1105 (La.1982)). "The appellate court shall not set aside a sentence for excessiveness if the record supports the sentence imposed." La.Code Crim.P. art. 881.4(D).

*State v. Frazier*, 14-1132, pp. 14-15 (La.App. 3 Cir. 3/4/15), 157 So.3d 1266, 1275-76, *writ denied*, 15-657 (La. 2/26/16), 187 So.3d 467. Additionally, "maximum sentences are generally reserved for the worst offenders and the worst offenses." *State v. Fallon,* 15-1116, p. 6 (La.App. 3 Cir. 4/6/16), 189 So.3d 605, 609.

Prior to the sentencing hearing, Defendant submitted a sentencing memorandum which the trial court admitted it reviewed prior to the hearing. The memorandum included a discussion of Defendant's personal history and mitigating factors. Attached to the memorandum were Defendant's service records for the United States Army and Louisiana National Guard, a letter from a psychologist who reviewed Defendant's hospital records and examined him at the request of defense

5

counsel, records from the Department of Health and Hospitals and Acadia Vermillion Hospital, seventeen letters on his behalf from community members, and a letter of remorse from Defendant. These exhibits were admitted into evidence at the hearing.

The sentencing memorandum and exhibits reveal that, in an incident relatively six weeks before the crime at issue, Defendant pulled a gun on Mrs. Mayfield during an argument. Thereafter, Defendant admitted himself to Acadia Vermillion Hospital for a mental evaluation and observation. He was diagnosed with severe depression and was described as "severely agitated and psychotic." While he was in the hospital, Mrs. Mayfield indicated she was leaving him and obtained a protection order against Defendant.

The defense also presented two witnesses at the sentencing hearing, Terrance Martin and Chris Mayfield, Sr. Terrance Martin testified that he grew up with Defendant and that his uncle was Defendant's stepfather. Mr. Martin testified that Defendant was a fun, active, well-behaved child who went on to graduate high school and join the military despite being a gifted football player. He further testified that because he and Defendant were both combat veterans, they often talked to each other about their time in the military. According to Mr. Martin, he and Defendant supported each other as they tried to process their experiences from serving in the military. Mr. Martin testified that he was shocked to hear that Defendant had killed his wife. He has also visited Defendant since his incarceration and learned that Defendant was trying to mentor some of the younger inmates. According to Mr. Martin, Defendant expressed his remorse for his actions, and Mr. Martin asked the court for leniency in sentencing Defendant. On cross-examination, Mr. Martin

6

testified that Defendant left the mental health hospital on his own accord to return to work to provide for his family and that Defendant did not complete the treatment.

Chris Mayfield, Sr., Defendant's brother, testified that he and Defendant had a close relationship since they were children, and they remained close. Chris Mayfield testified that Defendant was proud of his eight years of military service and Defendant told him many stories about his time serving. He testified that Defendant was a great father and worked hard to take care of his family. In 2011, Chris Mayfield and his wife lost two of their children within a little over a month's time. He testified that Defendant was devastated about losing his nephews, who he had spoiled like they were his own children. Chris Mayfield testified that he was aware of the incident when Defendant pulled a gun on his wife prior to seeking mental health treatment. Additionally, he testified that following the current incident, Defendant came to his house and said that he had killed his wife. Chris Mayfield's testimony revealed that Defendant expressed remorse for what he did. On cross-examination he testified that Defendant's wife was not violent and that he was aware that Mrs. Mayfield obtained the restraining order against Defendant based on allegations that Defendant beat his daughter. According to Chris Mayfield, Defendant's children were not allowed to see Defendant since his incarceration and had only very limited time with Defendant's side of the family. He further testified that, to his knowledge, at least one of Defendant's children was at the residence when Defendant killed his wife.

The State called Mrs. Mayfield's sister, Tameka Minix, to read a statement on behalf of her family regarding the impact that Mrs. Mayfield's death has had on the family. Following the victim impact statement, the State argued that Defendant was receiving leniency by pleading guilty to manslaughter after initially being charged

7

with first-degree murder. The State requested that Defendant be sentenced to the maximum term given the nature of the crime and given that Defendant held his wife down and shot her in the back of the head while their children were present in the residence.

In response, defense counsel explained that Defendant accepted responsibility for his actions and, via a lengthy statement, addressed all of the mitigating factors present, including Defendant's lack of a criminal history, Defendant's medical history and the mental health facility's treatment of his mental conditions through a number of medications, Defendant's potential to respond well to treatment, and Defendant's decorated military service. In all, the trial court listened to nearly three transcript pages worth of mitigating factors presented by defense counsel in addition to the prior testimony by the defense's witnesses, the exhibits entered into evidence supporting the mitigating factors, Defendant's previously filed sentencing memorandum with numerous community support letters, and the PSI ordered by the trial court.

The record clearly indicates that the trial court was made aware of potentially mitigating factors concerning Defendant. These facts address the "circumstances of the offender" pursuant to the factors this court outlined in *Frazier*, 157 So.3d 1266.

The trial court also addressed the "nature of the offense" factor in the *Frazier* analysis. The trial court noted that it believed the facts "clearly" supported "a minimum of [a] second-degree" murder conviction, "which carries a life sentence[,]" that the acts committed by Defendant were heinous, that the plea was a reduction from what Defendant may have been sentenced to under the initial charge of first-degree murder, and that the imprisonment of Defendant prevents another tragedy of this nature at his hands.

8

On appeal, Defendant attempts to distinguish his conduct from other cases in which the defendant received the maximum manslaughter sentence by suggesting that he did not demonstrate the deliberate cruelty found in the other cases.

In *State v. Plauche*, 09-400 (La.App. 3 Cir. 1/6/10), 32 So.3d 852, *writ denied*, 10-302 (La. 9/24/10), 45 So.3d 1070, this court upheld a forty-year maximum sentence for manslaughter where the defendant shot his wife in the neck, without provocation, two weeks after learning that she was having an affair. He did not try to help his wife after shooting her and he did not call the police. The trial court noted the defendant's lack of criminal history, the fact that the events were unlikely to occur again, and that the defendant's imprisonment would be an excessive hardship to his children. However, the trial court believed that the conduct by the defendant rose to second-degree murder, which was the defendant's original charge. The trial court sentenced the defendant to the maximum sentence for manslaughter and this court found no abuse of discretion in that sentence.

Additionally, Defendant argues that *State v. Soriano*, 15-1006 (La.App. 3 Cir. 6/1/16), 192 So.3d 899, *writ denied*, 16-1523 (La. 6/5/17), 219 So.3d 1111, exemplifies facts typical of "the worst" kind of manslaughter offense for which a maximum sentence is generally reserved. In that case, this court found that the imposition of a maximum sentence for manslaughter was not excessive where the defendant, a first-time felony offender, stabbed the victim once, then chased the victim down and stabbed him again after the victim had retreated. The trial court rejected the defendant's self-defense claim because it found no explanation as to why the defendant did not retreat rather than chasing the victim and stabbing him a second time.

In *State v. Duhon*, 17-19 (La.App. 3 Cir. 6/13/17), 224 So.3d 1, *writ denied*, 17-1278 (La. 4/27/18), 239 So.3d 835, this court found that the imposition of a maximum sentence for manslaughter was not excessive. The defendant emptied his clip by shooting three of his wife's relatives, called 911, returned home to get his son, then surrendered his son to his brother. The defendant then got in his vehicle, allegedly tried to ask a woman for directions, and then fled when the woman locked her doors and called the Lafayette Police Department believing the defendant was trying to steal her car. The defendant was later apprehended. The defendant "told the investigating officer he would have emptied another clip if he had had it." *Id*. at 12. The defendant was ultimately charged with two counts of attempted first-degree murder and one count of first-degree murder. After a plea agreement, the defendant entered a plea of guilty to one count of manslaughter and two counts of attempted manslaughter. At the sentencing hearing the defendant's mother-in-law testified that "she was not surprised by the shootings" and that the defendant had been violent towards her daughter during a "few fights between them where she had to intervene." *Id*. at 9. The defendant's wife also testified that following the incident he strangled her and that she did not believe that he was in his right mind; that defendant was a veteran, dishonorably discharged for his use of drugs, who would often have flashbacks. Additionally, two of three experts "concluded that the defendant was capable of distinguishing right from wrong at the time of the shootings." *Id*. at 13. This court affirmed the maximum sentence.

However, in *Frazier*, 157 So.3d 1266, this court affirmed the mid-range sentence of twenty years at hard labor, with credit for time served, for the fatal stabbing of a man following an altercation over parking. The court considered the defendant's remorse, desire to set-up a trust fund for the victim's son, positive

character witnesses, the defendant's short criminal history, and the defendant's anger leading up to the stabbing.

Also, this court in *State v. Osborn*, 13-697 (La.App. 3 Cir. 12/11/13), 127 So.3d 1087, affirmed a sentence of thirty years at hard labor when the defendant pled guilty to a reduced charge of manslaughter. The defendant was engaged with several others in an altercation after leaving a bar when his girlfriend, who was trying to break up the dispute, was shot. The defendant intentionally retrieved a gun and fired it, resulting in the victim's death. The trial court considered the defendant's age, his criminal history, the assertions that his actions were unlikely to recur, the provocation in the situation, and the defendant's belated apology to the family. On appeal, and after a comparison to other cases, this court affirmed the sentence.

On the contrary, the facts in this case are more egregious. As previously mentioned in this case, Defendant took his wife from her vehicle and into his home where he then shot her in the back of the head while at least one of their children was present in the home. Additionally, Defendant pulled a gun on his wife several weeks prior to this incident. The State notes that the restraining order obtained by his wife indicates he beat his child and Mr. Chris Mayfield testified he understood the restraining order was based on allegations that Defendant beat his child. Although Defendant called 911 and turned himself in to the police, and has also expressed remorse on several occasions, the trial court noted that it believed Defendant's conduct, at the very least, amounted to second-degree murder. Without the plea agreement reducing the charge from first-degree murder to manslaughter,

11

Defendant faced a life sentence.[4] Defendant's plea of guilty to manslaughter provided him with a substantial benefit.

The trial court clearly was presented with any potential mitigating factors to consider prior to deciding Defendant's sentence. Defendant's conduct was heinous and cannot be distinguished as less serious or severe than the conduct detailed in the cases above in which the maximum sentence for manslaughter was given. After a review of the record, we find that the trial court did not abuse its discretion in imposing a forty-year maximum sentence for manslaughter in the present case, however, we amend Defendant's manslaughter sentence to delete the denial of parole eligibility and instruct the district court to make an entry in the minutes reflecting this change.

**AFFIRMED AS AMENDED.**

This opinion is NOT DESIGNATED FOR PUBLICATION.
Uniform Rules—Courts of Appeal, Rule 2-16.3.

---

[4]Because the State filed a Notice of Intent Not to Seek the Death Penalty on November 18, 2013, Defendant was only facing life imprisonment on the first-degree murder charge.