STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

10-583


STATE OF LOUISIANA

VERSUS

GILES MCGHEE


**********

APPEAL FROM THE
TWELFTH JUDICIAL DISTRICT COURT
PARISH OF AVOYELLES, NO. 149167-A
HONORABLE MARK A. JEANSONNE, DISTRICT JUDGE

**********

**MARC T. AMY**
**JUDGE**

**********

Court composed of Ulysses Gene Thibodeaux, Chief Judge, Marc T. Amy and Billy
Howard Ezell, Judges.

                                                          **AFFIRMED.**

**Charles A. Riddle, III**
**District Attorney**
**Michael F. Kelly**
**Assistant District Attorney**
**Post Office Box 1200**
**Marksville, LA   71351**
**(318) 253-5815**
**COUNSEL FOR APPELLEE:**
     **State of Louisiana**

**Carey J. Ellis, III**
**Louisiana Appellate Project**
**707 Julia Street**
**Rayville, LA 71269**
**(318) 728-2043**
**COUNSEL FOR DEFENDANT/APPELLANT:**
     **Giles McGhee**

**Giles McGhee**
**D.W.C.C. - H2B**
**670 Bell Hill Road**
**Homer, LA 7 1040**

AMY, Judge.

A jury convicted the defendant of manslaughter, and the trial court sentenced the defendant to forty years imprisonment at hard labor. The defendant now appeals his conviction and sentence. For the following reasons, we affirm.

**Factual and Procedural Background**

In the early morning hours of December 21, 2008, at Borrel's Club in Marksville, Louisiana, an altercation ensued between Giles McGhee, Ronnie Day, and Troy Day. During this fight, a gun was fired and Myron Mingo, a bystander, was shot. Mr. Mingo later died as a result of his injuries.

On February 26, 2009, Giles McGhee was charged by bill of indictment with manslaughter, a violation of La.R.S. 14:31, in Mr. Mingo's death. In that indictment, the State asserted alternative theories of manslaughter, alleging that: the defendant shot Mr. Mingo without intent to cause death or bodily harm while engaged in the perpetration or attempted perpetration of a felony not enumerated[1] in La.R.S. 14:30 or La.R.S. 14:31, specifically, the felony of possession of a firearm by a convicted felon; or the defendant shot Mr. Mingo while in the perpetration of committing an intentional misdemeanor, aggravated assault, against Ronnie Day.

The defendant pled not guilty, and the matter proceeded to trial by jury. On September 29, 2009, the jury found the defendant guilty of manslaughter. The defendant filed a "Motion for Post Verdict Judgment of Acquittal, Judgment Notwithstanding the Verdict and Alternative Motion for New Trial" on November 16, 2009, which was subsequently denied. Thereafter, the trial court sentenced the defendant to serve forty years imprisonment at hard labor. The defendant filed two

---

[1] Originally, the bill of indictment read "engaged in the perpetration or attempted perpetration of a felony enumerated in Article 30 or 30.1[.]" On September 28, 2009, the bill of indictment was amended to add the word not in the phrase "perpetration or attempted perpetration of a felony [not] enumerated in Article 30 or 30.1."

"Motions to Reconsider Sentence" which were also denied.

The defendant appeals, challenging the sufficiency of the evidence used to convict him in addition to the excessiveness of his sentence. For the following reasons, we affirm the defendant's conviction and sentence.

## Discussion

*Errors Patent*

In accordance with La.Code Crim.P. art. 920, all appeals are reviewed for errors patent on the face of the record. After reviewing the record, we find one error patent.

The minutes of the sentencing hearing reflect, in pertinent part: "THE COURT ALSO INFORMED THE DEFENDANT OF THE PROVISIONS RELATING TO POST-CONVICTION RELIEF AS REQUIRED BY ARTICLE 930.8 OF THE LOUISIANA CODE CRIMINAL PROCEDURE." However, the sentencing transcript reflects that the trial court stated, "I must tell you that under the law you do have five days to appeal to which to apply for post-conviction relief." After the trial court excused the parties, the following exchange took place:

> [State]:
> I think, Judge, that, I'm not sure, but I would ask you to just repeat it, just in case. Notifying the defendant that he has to [sic] years to file post conviction."

> [Counsel for the defendant]:
> He did.

> [State]:
> He did?

> By the Court:
> Yeah, I just cant' [sic] speak loud today, I'm sorry.

2

Louisiana Code Criminal Procedure Article 930.8 provides that the two-year prescriptive period begins to run when the defendant's conviction and sentence become final under the provisions of La.Code Crim.P. arts. 914 or 922. Louisiana Code of Criminal Procedure Articles 914 and 922 provide for the time period for filing an appeal as well as the time at which an appellate court or supreme court judgment becomes final. According to the time periods set forth in those articles, the earliest a conviction and sentence can become final is *thirty* days after the imposition of sentence, provided that the defendant files neither an appeal nor a motion to reconsider sentence. Thus, the trial court erroneously advised the defendant regarding the prescriptive period of La.Code Crim.P. art. 930.8. Accordingly, the trial court is directed to inform the defendant of the correct prescriptive period by sending appropriate written notice to the defendant within ten days of the rendition of this opinion. Additionally, the trial court should be instructed to file written proof in the record that the defendant received the notice. *State v. Roe*, 05-116 (La.App. 3 Cir. 6/1/05), 903 So.2d 1265, *writ denied*, 05-1762 (La. 2/10/06), 924 So.2d 163.

*Sufficiency of the Evidence*

In his first assignment of error, the defendant contends that there was insufficient evidence to support his manslaughter conviction.

In reviewing the sufficiency of the evidence to support a conviction, an appellate court is controlled by the standard enunciated by the United States Supreme Court in *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781 (1979). *State v. Tate*, 01-1658 (La. 5/20/03), 851 So.2d 921. Under the *Jackson* standard, the appellate court must determine that the evidence, viewed in the light most favorable to the

3

prosecution, was sufficient to convince a rational trier of fact that all of the elements of the crime had been proved beyond a reasonable doubt. *Id.*

Manslaughter is defined, as applicable to the present matter, in La.R.S. 14:31(A)(2)(a), which states:

> A. Manslaughter is:
>
>  (2) A homicide committed, without any intent to cause death or great bodily harm.
>
> (a) When the offender is engaged in the perpetration or attempted perpetration of any felony not enumerated in Article 30 or 30.1, or of any intentional misdemeanor directly affecting the person;

Here, the State sought to prove the defendant's guilt under alternative theories. First, the bill of indictment alleged that the defendant committed manslaughter:

> by shooting him with a pistol without any intent to cause death or great bodily harm when Giles McGhee was engaged in the perpetration or attempted perpetration of a felony not enumerated in Article 30 or 30.1 namely a violation of R.S. 14:95.1 entitled "Possession of a Firearm by a Person Convicted of Certain Felonies" in that after having been convicted by [sic] a violation of the Uniform Controlled Dangerous Substances Law which is a felony, namely Possession of Cocaine in Criminal Docket Number 142,999 on the Docket of the Twelfth Judicial District Court on April 3, 2008 and was sentenced to 3 years at hard labor, sentence suspended and placed on supervised probation for two years, did thereafter possess a firearm[.]

Also, the State alleged that the defendant committed manslaughter by "intentionally commit[ting] a misdemeanor directly affecting a person, that is a violation of R.S. 14:37 entitled 'Aggravated Assault' in that he did intentionally place Ronnie Day in reasonable apprehension of receiving a battery with a dangerous weapon," resulting in the death of Mr. Mingo.

In brief, the defendant asserts that the testimony of the witnesses was inconsistent and irreconcilable, thus the State could not have been said to present sufficient proof that he had a gun or fired a gun. The defendant asserts that neither

4

of the bouncers working at the lounge testified they saw the defendant with a gun. He contends that the "only two witness[es] who testified that Defendant had a gun were Ronnie and Troy Day." The defendant also points to the testimony of Natalie Stovall, the sister of Brenda Campbell who was also at Borrel's Lounge when Mr. Mingo was killed. Natalie testified that she could not see the defendant's hands during the fight because he was balled up on the floor. She testified that she did not see a gun, but heard the gunshots. She further related that the defendant was wearing a tight shirt. In brief, the defendant asserts that Natalie's testimony that he was wearing a tight-fitting shirt evidences that it would have been hard for him to conceal a weapon.

The record reveals that several witnesses testified that the defendant brandished a weapon at Borrel's Lounge. At trial, Ronnie Day testified that prior to the night at Borrel's Lounge, there had been a dispute between his family and the defendant's family. He related that he went to Borrel's Lounge with his cousin Troy Day, and after an hour in the club, he encountered Brenda Campbell, the defendant's girlfriend. He testified to the events as follows:

> She [Brenda] had a [bottle of] gin in her hand. Then I pushed out the way [sic]. And he [the defendant] was standing behind her where she was standing. And that's when he [the defendant] looked up, he seen me. He went to raise up his shirt. That's when I started hitting him. He leaned forward and I heard him going for it. I leaned over him and I stuck my hand underneath him and grabbed the head of the gun. Then I moved to his hand trying to open it and finally to get the gun. I told my cousin he's got a gun. So I moved to the other side of him and my cousin came on the other side and me and my cousin was [sic] trying to pry his hands open. That's when everybody started rushing out [of] the club.

He further testified that after wrestling for the gun, the defendant fell over and "balled up" on the ground under him, and he did not see the gun again. Ronnie responded affirmatively that he did not doubt that there was a gun in the defendant's hand.

Troy Day, Ronnie Day's cousin, testified that he also saw the defendant "draw back underneath his shirt" before Ronnie started hitting him. He testified that, after being hit, as the defendant was falling back, he saw a "chrome and black gun" coming out from underneath the defendant's shirt. Troy stated that the gun fired while Ronnie was hitting the defendant, and Ronnie yelled, "Troy he['s] got a gun." Troy related that he began struggling for the gun, eventually holding the defendant's hand upward "where the gun couldn't be shot any more." He testified that while he was holding the defendant's arm, the defendant bit his arm and Brenda and some of Brenda's friends started beating him. He related that when the group of people fighting fell to the ground, the gun flew out of the defendant's hands. He testified that he did not pick up the gun nor did he see anyone else pick up the gun.

Robert Malbrough, a bouncer at Borrel's on the night at issue, testified that he was coming out of the bathroom when the fight started. He related that he heard a gunshot and saw the defendant and Ronnie struggling over a gun. Robert testified that he grabbed Ronnie and dragged him into the bathroom while Ronnie was telling him "hold on, hold on, he's trying to shoot me." Robert confirmed that Ronnie was referring to the defendant. Another bouncer, Bennett Dominick, testified that he heard the sound of gunfire and observed that the defendant and Ronnie and Troy Day were fighting. He stated that he never saw a gun.

After reviewing the record in a light most favorable to the prosecution as required under the *Jackson* standard, we find that there was sufficient evidence to

6

prove that the defendant committed manslaughter. "It is well-settled jurisprudence that the testimony of a single witness, absent internal contradictions or irreconcilable conflicts with physical evidence, is sufficient to support a conviction. The credibility of the witness is a matter of weight of the evidence, not sufficiency, and determination of the credibility is left to the trier-of-fact's sound discretion and will not be re-weighed on appeal." *State v. Jeter*, 09-1004, p. 3 (La.App. 3 Cir. 4/7/10), 33 So.3d 1041, 1043-44. Here, Ronnie Day testified that he felt the gun when the defendant fired it, and he subsequently grabbed the gun. Troy Day testified that he saw the gun in the defendant's hand. Further, Ronald Malbrough testified that he saw Ronnie and the defendant struggling over a gun, and Ronnie stated that the defendant was trying to shoot him. The jury's guilty verdict indicates that it chose to believe this testimony, and as explained above, those credibility determinations should not be second-guessed by this court. Thus, the State proved that the defendant possessed a firearm.

As explained above, the necessary elements of proving manslaughter under the State's first theory was proving that a homicide was committed without any intent to cause death or great bodily harm when "the offender is engaged in the perpetration or attempted perpetration of any felony not enumerated in Article 30 or 30.1[.]" Possession of a firearm by a convicted felon, a violation of La.R.S. 14:95.1, is not an enumerated felony in Article 30 or 30.1. To prove a violation of La. R.S. 14:95.1, the State must prove: (1) the possession of a firearm; (2) a prior conviction for an enumerated felony as enumerated in La.R.S. 14:95.1; (3) the absence of the ten-year statutory limitation period; and, (4) the general intent to commit the crime. *State v. Hanner*, 09-1109 (La.App. 3 Cir. 4/14/10), 35 So.3d 1178. The State offered evidence

7

that the defendant pled guilty in April 2008 to possession of cocaine, a felony.[2] The

general intent to commit the crime of possession of a firearm was proven through the

defendant's actual possession of the gun. Thus, under the standard of review here,

we find that the record supports a finding that the State proved the elements of

manslaughter beyond a reasonable doubt.

This assignment of error is without merit.

*Excessiveness of the Sentence*

In his second assignment of error, the defendant contends that his sentence of

forty years imprisonment at hard labor is excessive. A conviction of manslaughter

is punishable by imprisonment for not more than forty years. La.R.S. 14:31. The

defendant asserts that although he has a prior conviction for possession of cocaine,

he is not the worst offender for whom maximum sentences are reserved. He

additionally asserts he was twenty-five years old at the time of sentence. Further,

"considering that factors in mitigation of a less severe sentence should have been

given more weight, the goals of punishment can better be accomplished with a less

severe sentence."

In *State v. Fontenot*, 09-1044, pp. 4-6 (La.App. 3 Cir. 5/12/10), 38 So.3d 1122,

1125-26, a panel of this court stated:

> The Eighth Amendment to the United States Constitution and La. Const. art. 1, § 20 prohibit the imposition of cruel or excessive punishment, and the law is well settled with regard to what constitutes cruel or excessive punishment. An excessive sentence is a penalty that is so grossly disproportionate to the severity of the crime that it shocks our sense of justice or it makes no measurable contribution to acceptable

---

[2] A felony is defined as "any crime for which an offender may be sentenced to death or imprisonment at hard labor." La.R.S. 14:2. Conviction of the possession of a schedule II drug, cocaine, carries a sentence of imprisonment with or without hard labor for no more than five years. La.R.S. 40:967. Thus, the defendant was convicted of a felony.

penal goals and, therefore, is nothing more than a needless imposition of pain and suffering. *State v. Campbell*, 404 So.2d 1205 (La.1981). Additionally, the trial court is given wide discretion in imposing a sentence, and, absent a manifest abuse of that discretion, the reviewing court should not deem as excessive a sentence imposed within statutory limits. *State v. Howard*, 414 So.2d 1210 (La.1982); *State v. Pyke*, 95-919 (La.App. 3 Cir. 3/6/96), 670 So.2d 713. Still, a sentence that falls within the statutory limits may be excessive under the particular circumstances of a given case. *State v. Sepulvado*, 367 So.2d 762 (La.1979). Additionally, "[m]aximum sentences are reserved for the most serious violations and the worst offenders." *State v. Farhood*, 02-490, p. 11 (La.App. 5 Cir. 3/25/03), 844 So.2d 217, 225. The only relevant question for the reviewing court to consider is not whether another sentence would be more appropriate, but rather whether the trial court abused its broad discretion in sentencing a defendant. *State v. Cook*, 95-2784 (La.5/31/96), 674 So.2d 957, *cert. denied*, 519 U.S. 1043, 117 S.Ct. 615, 136 L.Ed.2d 539 (1996).

Louisiana Code of Criminal Procedure Article 894.1(A) provides that the trial court should impose an imprisonment sentence if any of the following are established by the record:

(1) There is an undue risk that during the period of a suspended sentence or probation the defendant will commit another crime.

(2) The defendant is in need of correctional treatment or a custodial environment that can be provided most effectively by his commitment to an institution.

(3) A lesser sentence will deprecate the seriousness of the defendant's crime.

Additionally, the trial court must "state for the record the considerations taken into account and the factual basis therefor in imposing sentence." La.Code Crim.P. art. 894.1(C). However, in complying with this article, the trial court "need not articulate every circumstance or read through a checklist of items." *State v. Anderson*, 95-1688, p. 4 (La.App. 3 Cir. 5/8/96), 677 So.2d 480, 483.

At the sentencing hearing, the trial court noted the defendant's criminal history[3] and found that there was an undue risk that the defendant might commit another crime if he received a suspended sentence. Additionally, it noted that the defendant was in

---

[3] At the sentencing hearing, the trial court noted that the defendant had pled guilty to domestic battery in 2007 in Avoyelles Parish and possession of cocaine in 2008 in Avoyelles Parish.

need of a custodial environment that could be most effectively provided by commitment to the Department of Corrections. The trial court also discussed the victim's background and stated that a lesser sentence than what it was going to impose would deprecate the seriousness of the offense. The trial court further found the case "called for the severest of penalties" because the victim was "living a virtuous life, had nothing to do with any type of violent activity[,]" and "people have to know that when you [c]onduct yourself in that kind of behavior senselessly, recklessly, and a life is taken that there is the severest punishment awaiting." The trial court then discussed the factors set forth in La.Code Crim.P. art. 894.1.

After review of the record, we find that the trial court did not abuse its discretion in sentencing the defendant to the maximum sentence. In light of facts of this case as considered by the trial court, such as the seriousness of the offense and the defendant's criminal history, we find that the defendant's sentence is not excessive.

This assignment of error lacks merit.

**DECREE**

For the foregoing reasons, we affirm the defendant's conviction and sentence. The trial court is directed to inform the defendant of the correct prescriptive period by sending appropriate written notice to the defendant within ten days of the rendition of this opinion. Additionally, the trial court is instructed to file written proof in the record that the Defendant received the notice.

**AFFIRMED.**