# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

**26-95**


**STATE OF LOUISIANA**

**VERSUS**

**KARDAE VYNTREL CALDWELL**


\*\*\*\*\*\*\*\*\*\*


APPEAL FROM THE
FOURTEENTH JUDICIAL DISTRICT COURT
PARISH OF CALCASIEU, NO. 13612-23
HONORABLE KENDRICK J. GUIDRY, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*


**CHARLES G. FITZGERALD**
**JUDGE**

\*\*\*\*\*\*\*\*\*\*


Court composed of Elizabetth A. Pickett, Candyce G. Perret, and Charles G. Fitzgerald, Judges.


**AFFIRMED.**

**Remy Voisin Starns**
**State Public Defender**
**Louisiana Appeals & Writ Service**
**Office of the State Public Defender**
**Corrie R. Gallien**
**1030 Lafayette Street, Suite 12**
**Lafayette, Louisiana 70501**
**(337) 761-1585**
**Counsel for Defendant/Appellant:**
  **Kardae Vyntrel Caldwell**

**Stephen C. Dwight**
**District Attorney**
**John Eric Turner**
**Assistant District Attorney**
**Fourteenth Judicial District**
**901 Lakeshore Drive, Suite 800**
**Lake Charles, Louisiana 70601**
**(337) 437-3400**
**Counsel for Appellee:**
  **State of Louisiana**

**FITZGERALD, Judge.**

Defendant, Kardae Vyntrel Caldwell, appeals his sentence for manslaughter following a guilty plea.

In October 2023, Defendant was charged by grand jury indictment with the first-degree murder of Gerard Wilson Jr. and with the attempted second-degree murder of Andre Cornelius.

In March 2025, pursuant to a plea agreement, the State dismissed the charge of attempted second-degree murder and reduced the charge of first-degree murder to manslaughter. Defendant pled guilty to that offense. Here is the factual basis for the plea:

> [THE STATE]
>
> If brought to trial, under Docket 13612-23, the State would prove that Officers with the Sulphur Police Department were dispatched to Verdine Street in reference to a shooting.
>
> Upon their arrival, there was a deceased person in the front yard by the name of Gerard Wilson, Jr. There was an injured person on the inside by the name of Andre Cornelius. And there was also a juvenile located in the home as well, who was Andre Cornelius' son.
>
> Investigation revealed, and surveillance also revealed that [Defendant was present inside of] the vehicle that was used to get to Verdine Street, as well as Memorial Hospital afterwards. . . . So the State would prove that [Defendant] had knowledge, at least, of the drug deal that ultimately led to the murder of Mr. Gerard Wilson. So it would be more so principal, Your Honor, all within the confines of Calcasieu Parish.
>
> [DEFENSE COUNSEL]
>
> Your Honor, if I may, we're acknowledging [Defendant] was a principal to the homicide. He was not the shooter. However, he rode from Lake Charles to Sulphur over there, was present, and is pleading guilty as a principal to the homicide.
>
> . . . .

Your Honor, what [Defendant] wants to say is he was involved in what was gonna be a drug deal and, obviously, things went wrong. He didn't have a gun and - - but he was present for what went wrong. And he is recognizing his position as a principal.

Four months after pleading guilty to manslaughter, the trial court sentenced Defendant to thirty years at hard labor. Defendant made a general objection to his sentence at that time. In the weeks that followed, Defendant filed two separate motions to reconsider sentence, both of which were denied by the trial court. Defendant now appeals his sentence.

On appeal, Defendant asserts two assignments of error (emphasis in original):

I. **The trial court abused its sentencing discretion by misapplying the factors of La. Code Crim. Proc. Art 894.1 and failing to meaningfully consider [Defendant's] limited role in the offense.**

II. **Under Louisiana jurisprudence, maximum sentences are reserved for the most serious offenses and the worst offenders. Here, [Defendant's] sentence was excessive where the trial court sentenced him within the higher range of the sentencing scale despite his limited culpability.**

## LAW AND ANALYSIS

All criminal appeals are initially reviewed for errors patent on the face of the record under La.Code Crim.P. art. 920. Here, we find no patent errors.

**First Assignment of Error**

Although Defendant concedes that the trial court considered some of the sentencing factors in La.Code Crim.P. art. 894.1, Defendant asserts that the court failed to meaningfully consider these mitigating facts: he did not fire the fatal shot; he had not previously been convicted of a violent crime; and his sentence will result in excessive hardship for him and his four children. And this, Defendant argues, amounts to an abuse of the trial court's sentencing discretion. We disagree.

2

At the sentencing hearing, the State introduced two victim impact statements: one from Andre Cornelius, who was shot and paralyzed. The other from Gerard Wilson Sr., whose son was shot and killed. Defense counsel called one witness to testify: Defendant's mother.

Defense counsel then summed up things this way:

[Defendant] was not one of the shooters. [H]e drove to a place that somebody put on a GPS and told him drive here; he drove there; and then, you know, from there he did drive as they left. They left one of the involved people at this hospital.

He has no violent history in his criminal history. He has two non-violent convictions mostly involving substances. We would ask the Court be aware of that.

The State, in turn, focused on the following facts:

I want to highlight the child in the home, Jayden, [Defendant] knows that child. The homeowner of that residence, who's the child's father, [Defendant] knows that person as well.

So the idea that [Defendant] was a driver in a vehicle and didn't know what was going on or didn't know what was going to happen, evidence will show that he knew that they were going to hit a lick. He knew every single person was armed in that vehicle with a weapon.

Although evidence may not show that he got out of the car or that he shot the car, he had full knowledge of what the plan was whenever they were to get inside of the home and things went left.

We have one person that is dead. We have one person that is severely injured, and we have a child who will remember this for the rest of his life.

So to make it seem as though he's innocent and I was just in a car. I was driving. Somebody put it in the GPS. I didn't know what was happening and I helped a friend get to the hospital, that's not the case.

He at least knew that they were going to do a drug deal, and he at least knew that the people in the vehicle had weapons. Common sense would tell me that a drug deal gone bad means somebody will end up dead. I just wanted the record to reflect that.

Thereafter, the trial court sentenced Defendant to thirty years at hard labor.

Here are the court's reasons for that sentence:

The Court is tasked today of sentencing [Defendant] for the manslaughter of [Gerard] Wilson, Jr. Well, that's the only [offense] he pled to, but also noted by the Court, Andre Cornelius was shot and is now paralyzed as part of this crime.

This is a broken record of drugs and guns, drugs and guns, guns and drugs. No one seems to learn from their actions; and certainly the Court does not believe [Defendant's] statement that he didn't know what was going on. This certainly is indicative from the facts as put together by the police and the statements read by the Court. They went to steal drugs and money from Mr. Cornelius who sold drugs.

I've had the benefit of the pre-sentence investigation report by Probation and Parole. I have statements inside from Naquita Bellow that I've read, former girlfriend of Mr. Wilson, Kayla Poochi, sister of Mr. Wilson; and then subsequent to the PSI, the Court has read statements from [Gerard] Wilson, Sr. and from Andre Cornelius himself with regard to the impact of what happened that day when he was shot and maimed.

The Court notes the prior conviction of drugs, December 16, 2021, [Defendant], September 29, 2022. Apparently, the Court gave [Defendant] an opportunity at some point, because he was going to Genisys [sic] but didn't come for a status a particular day in 2022. Probation revoked on the original six-year sentence previously. The Court notes that.

I look at the 894.1 factors, the sentencing guidelines. I find two and three apply in that any sentence that I give less than what I'm about to give, would deprecate the seriousness of the offense. Also, I find incarceration to be the appropriate sentence for [Defendant].

I find aggravating factors paragraphs one, five, six, eight, nine, 10, 11, 18, 19, 20. I'll highlight a couple of them, not all of those; but I find those particular paragraphs as aggravating factors, including the use of a weapon, and the likely outcome of serious injury, in this situation death, the multiple offenders, and I also took into account the actions after.

It's not the first time the Court has heard, "I didn't know what was going on. I didn't know what we were about to do," but I look at the actions after. We drive to the hospital; we drop off one of the participants who apparently got shot as well, no call to the police, no seeking of help. You go to the hospital for help, but they dropped him off.

4

Then you go to a house after and you're hiding things in the back. It shows culpable behavior that the Court also finds is aggravating factors.

The only mitigating factor that I really could find, if I got my math right, [Defendant] is 28 years old, but the aggravating factors far outweigh this one mitigating factor.

He's had a good upbringing from his mother. She's provided some structure according to her testimony, and he's got prior convictions. One of which is illegal carrying of a weapon; so we've had a "Weapons" in the history. So this is not somebody, first-time felony offense, that the Court is dealing with.

As noted earlier, Defendant made a general objection at the time of sentencing. Then, in both of his subsequent motions, he asked the trial court to reconsider his sentence "pursuant to Code of Criminal Procedure Article 881.1 on the basis that the sentence imposed upon h[im] is excessive."

Louisiana Code of Criminal Procedure Article 881.1 provides the mechanism for preserving the review of a sentence on appeal:

A. (1) In felony cases, within thirty days following the imposition of sentence or within such longer period as the trial court may set at sentence, the state or the defendant may make or file a motion to reconsider sentence.

. . . .

E. Failure to make or file a motion to reconsider sentence or to include a specific ground upon which a motion to reconsider sentence may be based, including a claim of excessiveness, shall preclude the state or the defendant from raising an objection to the sentence or from urging any ground not raised in the motion on appeal or review.

Now on appeal, Defendant argues for the first time that his sentence was excessive because the trial court failed to consider that he did not fire the fatal shot, failed to consider that he had not previously been convicted of a crime of violence, and failed to consider that his imprisonment will cause excessive hardship for him and his four children. But none of these grounds were urged in the trial court.

5

Accordingly, we review Defendant's first assignment of error as a bare claim of constitutional excessiveness. *State v. Mims*, 619 So.2d 1059 (La.1993).

The standard of review for this type of claim was addressed in *State v. Williams*, 03-1537 (La.App. 3 Cir. 6/9/04), 875 So.2d 1043, *writ denied*, 04-1951 (La. 12/17/04), 888 So.2d 864. There, this court explained:

> Louisiana Constitution Article 1, § 20 expressly prohibits the imposition of "cruel, excessive, or unusual punishment." *State v. Delgado*, 03-46, p. 2 (La.App. 3 Cir. 4/30/03), 845 So.2d 581, 582. A sentence is unconstitutionally excessive if it is so greatly disproportionate to the seriousness of the offense so as to shock one's sense of justice, or if it provides no appreciable contribution to acceptable penal objectives and, consequently, is nothing more than the unnecessary imposition of pain and suffering. *State v. Day*, 02-1039 (La.App. 3 Cir. 2/5/03), 838 So.2d 74. In its opinion in *State v. Smith*, 01-2574, pp. 6-7 (La.1/14/03), 839 So.2d 1, 4, the Louisiana Supreme Court noted that an appellate court is to review an excessive-sentence claim in accordance with the following standard:
>
> > A trial judge has broad discretion when imposing a sentence and a reviewing court may not set a sentence aside absent a manifest abuse of discretion. *State v. Cann*, 471 So.2d 701, 703 (La.1985). On appellate review of a sentence, the relevant question is not whether another sentence might have been more appropriate but whether the trial court abused its broad sentencing discretion. *State v. Walker*, 00-3200, p. 2 (La.10/12/01), 799 So.2d 461, 462; *cf. State v. Phillips*, 02-0737, p. 1 (La.11/15/02), 831 So.2d 905, 906.
>
> In addition to the above considerations that factor into a defendant's sentence, in *State v. Williams*, 02-707, pp. 8-9 (La.App. 3 Cir. 3/5/03), 839 So.2d 1095, 1101, a panel of this court discussed the impact of a plea bargain upon the sentencing process, stating that:
>
> > The trial court may also consider other factors not provided by La.Code Crim.P. art. 894.1. Specifically, when the offense to which the defendant has pled guilty inadequately describes the entire course of the defendant's conduct, the court may consider the benefit obtained by the defendant through the plea bargain. *State v. Lanclos*, 419 So.2d 475 (La.1982). The trial court should particularly make such considerations where the plea bargain results in a significant reduction in the defendant's potential exposure to imprisonment. *State v.*

> *Robinson*, 33,921 (La.App. 2 Cir. 11/1/00); 770 So.2d
> 868; *State v. Waguespack*, 589 So.2d 1079 (La.App. 1
> Cir.1991), *writ denied*, 596 So.2d 209 (La.1992).

*Id*. at 1045–46.

Additionally, in determining whether a trial court abused its sentencing discretion, a reviewing court should consider the nature of the crime, the nature and background of the defendant, and the sentences imposed for similar crimes. *State v. Greene*, 12-649 (La.App. 3 Cir. 11/6/13), 126 So.3d 839.

In our case, Defendant was originally charged with first degree murder and attempted second degree murder. He was therefore exposed to a sentence of life imprisonment at hard labor for first degree murder and to a sentence of up to fifty years at hard labor for attempted second degree murder, both without benefit of probation, parole, or suspension of sentence. La.R.S. 14:30, 14:30.1, and 14:27. Yet in pleading guilty to the reduced charge of manslaughter, Defendant's maximum exposure was forty years at hard labor. La.R.S. 14:31(B). And indeed, the trial court sentenced Defendant to thirty years at hard labor.

Turning now to the nature of the offense. Manslaughter is statutorily defined as a "crime of violence." La.R.S. 14:2(B)(4). "By its very nature, manslaughter is one of the worst offenses in our criminal code[.]" *State v. Ponthieux*, 20-317, p. 8 (La.App. 3 Cir. 5/5/21), 319 So.3d 460, 465. And here, Defendant's actions left one man dead and another with serious and irreparable injuries—he was left paralyzed.

As to Defendant's nature and background, the trial court noted that Defendant had an extensive criminal history. For example, in December 2021, Defendant pled guilty to illegal carrying of a weapon while in possession of drugs, possession of a controlled dangerous substance (Schedule I) with intent to

distribute, and possession of Fentanyl. Defendant was sentenced to six years, suspended, and he was placed on three years' probation. While on probation, Defendant was arrested on new drug charges. In September 2022, Defendant pled to possession of a controlled dangerous substance (Schedule IV) and admitted violating his probation. Defendant's probation was revoked, but sentencing was deferred to allow him to participate in a drug program. But Defendant then missed a status hearing in June 2023, and a bench warrant was issued for his arrest. So in February 2025, Defendant was ordered to serve his original six-year sentence; he was also sentenced to two years for the drug offense committed while on probation.

Next, the trial court addressed the relevant aggravating and mitigating factors of La.Code Crim.P. art. 894.1. For instance, the trial court listed as aggravating factors the use of a weapon, the likely outcome of serious injury, the fact that multiple offenders were involved, and the actions taken by Defendant after the shooting. Indeed, the trial court found only one mitigating factor: Defendant's age—he was twenty-eight years old at the time of sentencing. Based on all this, the trial court concluded that any sentence less than the sentence imposed would deprecate the seriousness of the offense.

Now to a comparison of similar cases. In *State v. Hardin*, 25-278 (La.App. 3 Cir. 11/5/25), 423 So.3d 694, the defendant was originally indicted for second degree murder, attempted second degree murder, and possession of a weapon by someone convicted of fourth offense domestic abuse battery. The defendant subsequently pled guilty to manslaughter and attempted manslaughter. He was then sentenced to thirty years and fifteen years, respectively. He appealed,

8

claiming excessiveness. In affirming his sentences, this court performed a comparison of similar cases. Here is that comparison:

> In *State v. Tutson*, 18-738 (La.App. 3 Cir. 3/7/19), 270 So.3d 684, *writ denied*, 19-540 (La. 10/1/19), 280 So.3d 167, this court affirmed the maximum sentence of forty years for manslaughter. In that case, the defendant was a twenty-one-year-old first offender. He was charged with second degree murder for intentionally shooting the victim in the back. He was ultimately convicted by a jury of manslaughter.
>
> Similarly, in *State v. Soriano*, 15-1006 (La.App. 3 Cir. 6/1/16), 192 So.3d 899, *writ denied*, 16-1523 (La. 6/5/17), 219 So.3d 1111, the defendant, a twenty-five-year-old first offender, was charged with second degree murder for fatally stabbing the victim. The defendant in that case was convicted by a jury of manslaughter. He was sentenced to a maximum sentence of forty years. And his sentence was affirmed on appeal.
>
> Likewise, in *State v. Rouser*, 14-613 (La.App. 4 Cir. 1/7/15), 158 So.3d 860, the defendant was charged with one count of second degree murder and two counts of attempted second degree murder. Following a jury trial, the defendant was found guilty of the responsive verdicts of manslaughter and attempted manslaughter. The trial court then sentenced the defendant to thirty years at hard labor for manslaughter. In affirming the sentences, the fourth circuit provided the following comparison of similar case[s]:
>
>> In *State v. McGhee*, 10-583 (La.App. 3 Cir. 12/8/10), 52 So.3d 318, the defendant was convicted of manslaughter and sentenced to forty years at hard labor. During an altercation at a bar, the defendant shot and killed a bystander. The defendant was twenty-six years old at the time of the offense and had prior convictions for possession of cocaine and domestic abuse battery. The appellate court upheld the defendant's forty-year sentence.
>>
>> In *State v. Lewis*, 09-1404 (La. 10/22/10), 48 So.3d 1073, a sixteen-year-old male watched a fight between friends, Bush and Crain, as a bystander. During the fight, he picked up a gun that had fallen out of Bush's pocket and fired a single shot into Crain's temple. The sixteen-year-old was convicted of manslaughter and sentenced to thirty years at hard labor. The Louisiana Supreme Court affirmed defendant's sentence.
>>
>> In *State v. Osborn*, 13-697 (La.App. 3 Cir. 12/11/13), 127 So.3d 1087, the defendant, who was

> charged with second degree murder, went to a nearby vehicle to retrieve a gun and fired it to break up a fight, resulting in the death of the victim, who was also trying to break up the fight. He was convicted of manslaughter and sentenced to thirty years at hard labor. The appellate court upheld the defendant's thirty-year sentence.

*Id.* at 699.

In summary, Defendant here was facing a mandatory life sentence for first degree murder and up to fifty years for attempted second degree murder. By pleading to manslaughter, Defendant received a significant reduction in criminal penalties. And the sentence imposed by the trial court was far less than the maximum sentence.

Based on our review, the record contains a sufficient factual basis to support the sentence that was imposed. The sentence is not constitutionally excessive. The trial court did not abuse its discretion. Defendant's first assignment lacks merit.

**Second Assignment of Error**

In his second assignment, Defendant correctly states that maximum sentences are reserved for the most serious offenses and the worst offenders. But as pointed out by the State, the trial court did not impose the maximum sentence: the maximum sentence for manslaughter is forty years, and Defendant was sentenced to thirty years.

For the reasons given in our discussion of Defendant's first assignment of error, the trial court did not abuse its sentencing discretion. Hence, this assignment is also without merit.

## DISPOSITION

Kardae Vyntrel Caldwell's sentence for manslaughter is affirmed.

**AFFIRMED.**